FILED

2009 MAY 18  PM 2:01

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES

BY:_____

1  James Shannon
2  21329 Alvar Place
3  Carson, CA [90745]   *email address*
4  In Pro Per   *snsmotoringinc@ca.rr.com*
5          **DISTRICT COURT OF THE UNITED STATES**
6      ~~ARTICLE III SOUTHERN DIVISION~~ *by*
7      *WESTERN ~~CENTRAL~~ DIVISION*
          *CENTRAL DISTRICT*

| | |
|---|---|
| 8 **James Shannon,** | ) Case No. *CV09-3509 mmm* (*MANx*) |
| 9 **Plaintiff(s),** | ) **COMPLAINT AND REQUEST** |
| 10 | ) **FOR ORIGINAL PROMISSORY** |
| 11 | ) **NOTE AND FOR SELLING OF** |
| 12  **vs.** | ) **REAL PROPERTY LOCATED AT** |
| 13 | ) **11147 EVERS AVE., LOS** |
| 14 **AMERICA'S SERVICING** | ) **ANGELES, CA [90063], APN# 6070-** |
| 15 **COMPANY; GMAC MORTGAGE** | ) **010-019 W/O OWNERSHIP** |
| 16 **FIRST AMERICAN LOANSTAR** | ) **PAPERS - ORIGINAL** |
| 17 **TRUSTEE SERVICES; AND  DOES** | ) **PROMISSORY NOTE;** |
| 18 **1-10;** ~~et al~~ | ) **VIOLATION OF GAAP, RESPA,** |
| 19 **Defendant(s),** | ) **TILA AND UCC; THE FAIR DEBT** |
| 20 | ) **COLLECTION PRACTICES ACT;** |
| 21 | ) **WRONGFUL EVICTION; POINTS** |
| 22 | ) **AND AUTHORITIES IN SUPPORT** |
| 23 | ) **OF COMPLAINT REQUEST** |
| 24 | ) **WITH FRAUD AND INTENT TO** |
| 25 | ) **DEFRAUD.** |
| 26 | ) **Date:** |
| 27 | ) **Courtroom:** |
| 28 | ) **Time:** |

```
5/18/2009 2:06:13 PM  Receipt #: 118779
      Cashier : ABELLAMY [LA 1-1]
Paid by: .
2:CV09-03509
2009-086900        5 - Civil Filing Fee(1)
Amount :                         $60.00
2:CV09-03509
2009-510000       11 - Special Fund F/F(1)
Amount :                        $190.00
2:CV09-03509
2009-086400        Filing Fee - Special(1)
Amount :                        $100.00
Cash  Payment :                 400.00
```

**TO THE DEFENDANT(S) AND THEIR ATTORNEYS OF RECORD AND ALL PARTIES OF INTEREST:**

Plaintiff(s) requests that an Article III appointed judge hear this case as this is the proper Court which is the proper venue for a non-administrative hearing. This Article III Court as provided for in Article III of the U.S. Constitution has subject matter jurisdiction to hear this case. Plaintiff(s) requests an Article III appointed Judge or an equal Article III Judge hear this case. This court shall proceed under the common law. This court has jurisdiction under 28 U.S.C. sections 1331, 1340, 1343(a)(3), and 1346(a)(1).

Plaintiff(s) asks the Court to take judicial notice that plaintiff(s) is without counsel, is not schooled to practice law; therefore, his pleadings must be read and construed liberally. See *Haines v. Kerner,* 404 US at 520 (1980); *Birl v. Estella* 660 F.2d 592 (1981); *National Labor Relations Board v. Tri-State Transport Corp.* 649 F.2d 993 (1984); *U.S. v. Michael R. Dougherty* 473 F.2d 1113; *Frank X. Lo Sacco v. Debra Young* 564 A.2d 610; and *Robert F. Maloney, Sr v. Susan H. Maloney,* 533 A.2d 1169 (1989). Further Plaintiff believes that this court has a responsibility and legal duty to protect any and all of plaintiff's constitutional and statutory rights. See *United States v. Lee,* 106 U.S., 196, 220 [1882].

## JURISDICTION

Jurisdiction of this court is established under the following: In rem jurisdiction is the power of a court to deal with a thing (e.g. a parcel of land, an automobile, a ship) and to determine its status in relation to the legal rights of all persons known and unknown. I.e., in a proceeding in rem the court exercises its power to

determine the status of property and the determination of the court is binding with respect to all possible interest holders in that property. Even a defendant whose activity in the forum is sporadic, or consists only of a single act, may be subject to the jurisdiction of the forum's courts when the cause of action arises out of that activity or act. ["specific jurisdiction"] (Friedenthal § 3.10) *Minimum Contacts.* Having sufficient dealings or affiliations with the forum jurisdiction which make it reasonable to require the defendant to defend a lawsuit brought in the forum state. (***Int'l Shoe***) Hence, a defendant who has never set foot in California may never less be subject to valid personal jurisdiction so as to be compelled to defend a lawsuit in California provided that he has minimum contacts with the forum state such that compelling him to appear and defend in the forum does not offend traditional notions of fair play and substantial justice. (*International Shoe Co. v. Washington*, 326 U.S. 310, 66 S. Ct. 154, 90 L. Ed. 95 (1945).

**Now comes the Plaintiff(s),** James Shannon, and requests of this Honorable Court that the above entitled action be Ordered with prejudice for an unlawful attempt to vacate the named property without proof of rightful ownership by the alleged agent's and seller's. The above named Defendants who **DO NOT HAVE PROOF OF OWNERSHIP** of  named property are in violation of the Fair Debt Collection Practices Act **TITLE VIII DEBT COLLECTION PRACTICES** [Fair Debt Collection Practices Act] § 803 (see exhibit A). Definitions [15 USC 1692a] ***Fields v. Wilber Law Firm, Donald L. Wilber and Kenneth Wilber, USCA-02-C-0072, 7th Circuit Court, Sept 2004*** and under **FDCPA Section 809. Validation of debts [15 USC 1692g] (b),** the named defendant's did not notify alleged debtor, via his obligation to do so under the above cited Law. Therefore, the Plaintiff then did not have probability to follow the Federal Law. Federal Law takes precedence when it conflicts with state law. "If the consumer notifies the debt collector in writing within the thirty-day period

described in subsection (a) that the debt, or any portion thereof, is disputed, or that the consumer requests the verified debt of the original creditor, the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt or any copy of a judgment, or the name and address of the original creditor, is mailed to the consumer by the debt collector.

So, if a creditor can't verify a debt:

- They are not allowed to collect the debt,
- They are not allowed to contact me about the debt, and
- They are also **not allowed to report it** under the Fair Credit Reporting Act (FCRA).

Doing so is a violation of the **FCRA**, and the **FDCPA** states that you can sue for $1,000 in damages for any violation of the Act.

The Defendant's were requested by Plaintiff(s) to produce the **Original Promissory Note** that gives them ownership. The informed Defendant should know that they have to do the above. They are in violation of the **GAAP** required by Federal Law, where the Defendants got the promissory note without spending one cent to purchase it under GAAP-the matching principle. The Defendants committed "Fraud in the Factum," plaintiff never agreed that her signature and Promissory Note was money to be stolen and returned as a loan. This case must be heard because the Plaintiff has raised lawful and pertinent issues which should stop the action.

[Summary of pleading] - 4

## **UNDISPUTED FACTS**

On or about 04/01/07, James Shannon, applied and were granted a Mortgage for the property located at 11147 Evers Avenue, Los Angeles, CA [90063], with APN# 6070-010-019 (hereafter "property"), and signed a "Promissory Note" (hereafter "Note"), on Loan #1158071890, #0359492183 and for $459,829.97 from AMERICA'S SERVICING COMPANY; GMAC MORTGAGE which was used to pay off and secure the aforementioned "property" in dispute. Somehow the total "principle" shows an amount of $459,829.97 and all was allegedly done in accordance with RESPA.

Since the time of the original transaction to the present the ownership of the property has allegedly changed hands so as to add to the confusion of this whole action.

Plaintiff(s) was not sent a Declaration Pursuant to California Civil section 2923.5 (c) by AMERICA'S SERVICING COMPANY; GMAC MORTGAGE FIRST AMERICAN LOANSTAR TRUSTEE SERVICES this paper would state under number 1. "Contact was made with the borrower to assess their financial situation and to explore options for the borrower to avoid foreclosure." Or number 2. "No contact was made with the borrower to assess their financial situation and to explore options to avoid foreclosure.

However since AMERICA'S SERVICING COMPANY; GMAC MORTGAGE; FIRST AMERICAN LOANSTAR TRUSTEE SERVICES did not in any of their papers attempt to obey California Civil section 2923.5 (c) and discuss negotiations where which were to rescue the mortgage owner as the mortgage owner was looking for assistance so that she would not lose the property. Plaintiff(s) have heard the many advertisements as to the fact that there

are all kinds of help for people to save their property from foreclosure. Plaintiff(s) contacted AMERICA'S SERVICING COMPANY; GMAC MORTGAGE FIRST AMERICAN LOANSTAR TRUSTEE SERVICES as alleged in 04/25/09 in an attempt to save their house from foreclosure. Apparently they could do nothing for the Plaintiff(s) except to state they were denying the request and proceeding with default and foreclosure to sell the property.

There wasn't any way out for Plaintiff(s) as the "LENDER" did not do anything to help even though the Federal government has used funds to bail out banks and mortgage companies so that they may help mortgages in trouble.

The predicament was not solved by the Defendant(s) nor did they propose an answer other than to threaten to take the "property" by filing a NOTICE OF TRUSTEE SALE in the Superior Court dated 03/13/09 with Trustee Sale Number document 20089134005770, to be sold on 04/30/09 at 11:30 AM, by the Defendants.

The Defendant(s)' by sending to Plaintiff(s) various papers and the alleged contacts made by specific entities stating that there would be a possible solution thereby created "Detrimental Reliance"- Response by promisee by way of act to offer of promisor in a unilateral contract, therefore this reliance not consummated, "Promissory Estoppel" was created- that which arises when there is a promise which promisor should reasonably expect to induce action or forbearance of a definite and substantial character on part of promisee, and which does induce such action or forbearance, and such promise is binding if injustice can be avoided only by enforcement of promise. *"Moore" Burger, Inc. v. Phillips Petroleum Co., Tex.,* 492 S.W. 2d 934. Elements of a "promissory estoppel" are a promise clear and unambiguous in its terms, reliance by the party to whom the promise is made,

with that reliance being both reasonable and foreseeable, and injury to the party asserting the estoppel as a result of his reliance. *James King & Sons, Inc. v. DeSantis Const. No. 2 Corp.,* 97 Misc.2d 1063, 413 N.Y.S.2d 78, 81.

Plaintiff(s) is requesting as to who has the original signed, and sealed Promissory Note executed by Plaintiff in reference to the "property" and this must be answered. Therefore Plaintiff under the Federal Statutes has the right to demand the location of her "note". If in fact under CUCC 3-309(a) "a person not in possession of an instrument may enforce it only if s/he was in possession of the instrument at the time of loss of possession. *Dennis Joslin Co. v. Robinson Broadcasting Corp.* 977 F. Supp. 491 (D.D.C. 1997). Notwithstanding that *Joslin* has not been followed or approved by any court, and, indeed has been rejected by a number of courts, e.g. *Beal Bank S.S.B. v. Caddo Parish-Villas South,* 218 B.R. 851 (N.D. Tex.) aff'd on other grounds, 174 F.3d 624 (5th Cir. 1998); *Bobby D. Associates v. Di Marcantonio,* 751 A.2d 673 (Pa. Super. 2000). There may be proof because of the unfulfilled request of the Plaintiff that the defendant has the "Note" but will not accede to Plaintiffs request that they are not in possession of the "Note" by acquiescence. The issue is FULL DISCLOSURE of the TERMS and EXECUTION of the agreement. Was Plaintiffs promissory note converted into something of value by the Lender and deposited into an account? If it has been stamped or had an "allonge" affixed to it to accommodate endorsements, then that is prima facie evidence that it was converted into a negotiable instrument. The Lender did not inform Plaintiff if they did this nor did they get written authorization from the Plaintiff. This is "fraud in the factum"

Plaintiff is requesting that defendants prove that they are following GAAP and will their books and records be produced as evidence of this. The bank accepted Plaintiffs "note" as new money as a deposit just like depositing money

into their checking account. Plaintiff(s) signature cannot testify that the bank lent them the bank's money to purchase their "note", but the bookkeeping entries prove that they lent no money to purchase their promissory note. If the Plaintiff lent the bank consideration given to purchase the "note" from them. No consideration was given as required by the UCC.

Foreclosure by summary judgment without a commercial bond is a violation of commercial law. Defendant(s) have not filed an affidavit of obligation on the property at bar, and therefore have not bona fide lien/debt to place on Plaintiff.

Defendant(s) are operating without a Charter violating County government and the U.S. Sup. Ct. ruling to keep the County government in check. (ref) ***Norton v. Shelby County***, 118 U.S. 425 (1886) Shepardized and not overturned.

County Agent(s), AMERICA'S SERVICING COMPANY; GMAC MORTGAGE; FIRST AMERICAN LOANSTAR TRUSTEE SERVICES Bank's, lawyers, and the Bench are operating a de facto seizure operation, not a de jure one; having no Charter.

Defendant(s) cannot obtain probable cause to seize property without a warrant; and when the filings in the Deeds Office are under Fraud, and false.

As a result of the Defendant(s)' extreme and outrageous conduct, Plaintiff(s) was, is, and with a high degree of likelihood, will continue to be emotionally distressed due to the intentional commission of multitudinous act(s) of trespass against family members safety, private property, personal belongings.

Defendant(s) have not given over 'just compensation' and Plaintiff(s) property cannot be taken for Public use without just compensation. 5th Amendment Bill of Rights.

The following court cases demand that the lender have possession of the Plaintiff(s) promissory note before Defendant(s) can collect:

***Matter of Staff Mortgage. & Investment Corp.,*** 550 F.2D 1228 (9TH Cir. 1977) "Under the Uniform Commercial Code the only notice sufficient to inform all interested parties that a security interest in instruments has been perfected is actual possession by the secured party, his agent or bailee." In Re Investors & Lenders LTD 165 B.R. 389 BKRTCY D.N.J. 1994" under the New Jersey Uniform Commercial Code, a promissory note is an "instrument, security interest in which must be perfected by possession…" The servicing agent has 60 days to give defendant the owners name after it is requested, Title 12 U.S.C.A. **"servicing agents".** Therefore Plaintiff has no contract with defendant and therefore cannot be sued by defendant(s). Now defendant claims that he is the holder in due course of the title of the home but the banks are <u>not</u> the holder of the "Note".

***First National Bank of Montgomery vs Jerome Daly***, (1968) Case No. 19144 IT IS HEREBY ORDERED, ADJUDGED AND DECREED: "That the Plaintiff is not entitled to recover the possession of Lot 19, Fairview Beach, Scott County, Minnesota according to the Plat thereof on file in the Register of Deeds office. That because of failure of a lawful consideration the <u>Note and Mortgage</u> <u>dated May 8, 1964 is null and void</u>. That the Sheriff's sale of the above described premises held on June 26, 1967 is null and void, of no effect. That the Plaintiff has no right to title or interest in said premises or lien thereon as is above described. That any provision in the Minnesota Constitution and any Minnesota Statute

1  binding the jurisdiction of this Court is repugnant to the Constitution of the United
2  States and to the Bill of Rights of the Minnesota Constitution and is null and void
3  and that this Court has jurisdiction to render complete Justice in this Cause. The
4  money and credit first came into existence when they created it. Mr. Morgan
5  admitted that no United States Law Statute existed which gave him the right to do
6  this. A lawful consideration must exist and be tendered to support the Note. See
7  *Ansheuser-Busch Brewing Company v. Emma Mason*, 44 Minn. 318, 46 N.W.
8  558. The Jury found that there was no consideration and I agree. Only God can
9  create something of value out of nothing. Even if Defendant could be charged
10 with waiver or estoppel as a matter of Law this is no defense to the Plaintiff. The
11 Law leaves wrongdoers where it finds them. See sections 50, 51 and 52 of Am Jur
12 2nd "Actions" on page 584 – "no action will lie to recover on a claim based upon,
13 or in any manner depending upon, a fraudulent, illegal, or immoral transaction or
14 contract to which Plaintiff was a party." Plaintiff's act of creating credit is not
15 authorized by the Constitution and Laws of the United States, is unconstitutional
16 and void, and is not a lawful consideration in the eyes of the Law to support
17 anything or upon which any lawful right can be built. That Defendant is awarded
18 costs in the sum of $75.00 and execution is hereby issued therefore. A 10 day stay is
19 granted.

21 *Washington Mutual Inc. v. Joe Lents* Washington Mutual Inc., the Seattle-
22 based lender failed to prove that it owned Lents's mortgage note and dropped
23 attempts to take his house. Subsequent efforts to foreclose have stalled because no
24 one has produced the paperwork.

26 Judges in at least five states have stopped foreclosure proceedings because
27 the banks that pool mortgages into securities and the companies that collect
28 monthly payments haven't been able to prove they own the mortgages.

[Summary of pleading] - 10

## MEMORANDUM OF POINTS AND AUTHORITIES

That Plaintiff(s) further objects to any and all Note allegation(s) of Lender: AMERICA'S SERVICING COMPANY; GMAC MORTGAGE FIRST AMERICAN LOANSTAR TRUSTEE SERVICES *and Henry M. Paulson, Jr. dba the Secretary of the U.S. Treasury did use Residential property as collateral,* and its agent(s) who knew that No Lawful Consideration of 31 USC 371 Money of Account did/can exist; thus, Lender did 'Act Beyond Scope of Corporate Powers' in 'Bank-Credit-Loan' exacting both Principle and Interest by 'Constructive Fraud Without Scienter' (437 SW 2d 20, 22. 28); in Payments of <u>unknown $,</u> to date.

Plaintiff(s) object to alleged Lender's "Bad-Check-Loan-Of-Bank-Credit", imposed by 'Constructive Fraud without Scienter' (437 SW2d 20, 28) and further contrary to Court Decisions: "Banks cannot loan *Credit*" (181 Wis. 172; 144 SW 501, 151, 69 SE 1123).

The lenders violation of the GAAP wherein they create money is fraudulent conversion making the contract, which the bank created with their policy of bookkeeping entries, illegal and the alleged contract is null and void. The bank's confusing and deceptive trade practices and their alleged contracts are unconscionable. The transaction that took place was merely a change of currency (without authorization), a negotiable instrument for a check. The negotiable instrument is the money, which can be exchanged for legal tender to make the check good. An exchange is not a loan.

The bank denies the alleged borrower equal protection under the law and contract, by merely exchanging one currency for another and refusing repayment in

the same type of currency deposited. The bank refused to fulfill the contract by not loaning the money, and by the bank refusing to be repaid in the same currency, which they deposited as an exchange for another currency. A debt tender offered and refused is a debt paid to the extent of the offer. The bank has no authorization to alter the alleged contract and to refuse to perform by not loaning money, by changing the currency and then refusing repayment in what the bank has a written policy to deposit. The seller of the home received a check. The money deposited for the check issued came from the borrower not the bank. The bank has no right to the mortgage note until the bank performs by loaning the money.

In the transaction the bank was to loan legal tender to the borrower, in order for the bank to secure a lien. The bank never made the loan, but kept the mortgage note the alleged borrower signed. This allowed the bank to obtain the equity in the property (by a lien) and transfer the wealth of the property to the bank without the bank's investment, loan, or risk of money. Then the bank receives the alleged borrower's labor to pay principal and Usury interest. What the people owned or should have owned debt free, the bank obtained ownership in, and for free, in exchange for the people receiving a debt, paying interest to the bank, all because the bank refused to loan money and merely exchanged one currency for another. This places you in perpetual slavery to the bank because the bank refuses to perform under the contract. The lien forces payment by threat of foreclosure. The mail is used to extort payment on a contract the bank never fulfilled.

If the bank refuses to perform, then they must return the mortgage note. If the bank wishes to perform, then they must make the loan. The past payments must be returned because the bank had no right to lien the property and extort interest payments. The bank has no right to sell a mortgage note for two reasons. The mortgage note was deposited and the money withdrawn without authorization by

using a forged signature and; two, the contract was never fulfilled. The bank acted without authorization and is involved in a fraud thereby damaging the alleged borrower.

The right to purchase property is a fundamental right of citizenship beyond the power of the state to deny to any citizen' *Beech Grove Investment v. Michigan Civil Rights Commission*, 157 North Western Reporter, 2d Series pgs 215,232. see also *Jones v. Mayer Company*, 392 U.S. 409.

Plaintiff(s) respectfully requests that the court take Judicial Notice of the fact that under **Article IV** section 1 Full Faith and Credit shall be given each State to the public Acts, Records, and judicial Proceedings of every other State.

**ARTICLE VI:** Speedy and public trials, impartial jury: nature and cause, right to confront; compulsory witnesses, **assistance of Counsel- note it does not say attorney**.

AMERICA'S SERVICING COMPANY; GMAC MORTGAGE; FIRST AMERICAN LOANSTAR TRUSTEE SERVICES and Defendants to be named later are in violation of TITLE VIII-DEBT COLLECTION PRACTICES [Fair Debt Collection Practices Act] § 803. Definitions [15 USC 1692a] As used in this title -- (6) The term "debt collector" means any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

Defendant(s) did not notify Plaintiff(s) of his rights to request the alleged debt with proof it exists.

Title 28 U.S.C. Sec. 1746. Un-sworn declarations under penalty of perjury:

Wherever, under any law of the United States or under any rule, regulation, order, or requirement made pursuant to law, any matter is required or permitted to be supported, evidenced, established, or proved by the sworn declaration, verification, certificate, statement, oath, or affidavit, in writing of the person making the same (other than a deposition, or an oath of office, or an oath required to be taken before a specified official other than a notary public), such matter may, with like force and effect, be supported, evidenced, established, or proved by the un-sworn declaration, certificate, verification, or statement, in writing of such person which is subscribed by him, as true under penalty of perjury, and dated, in substantially the following form:

(1) If executed without the United States:  I declare (or certify, verify, or state) under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on (date).

(Signature)'

(2) If executed within the United States, its territories, possessions, or commonwealths: I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct.

Executed on (date).

(Signature)'

(Added Pub. L. 94-550, Sec. 1(a), Oct. 18, 1976, 90 Stat. 2534.)


## **CASE LAW**

[Summary of pleading] - 14

"Fraud vitiates the most solemn contracts, documents, and <u>even judgments</u>" *U.S. v Throckmorton,* **98 U.S. 61.**

*"A court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proven consistent with the allegations." Hishon v. King & Spalding,* **467 U. S. 69, 73.**

*"Where rights secured by the constitution are involved, there can be no rule making or legislation which would abrogate them." Miranda,* **384 U.S. 436, at 491.**

"In the federal courts, it is well established that a national bank has no power to lend its credit to another by becoming surety, endorser, or guarantor for him.'" *Farmers and Miners Bank v. Bluefield Nat 'l Bank,* 11 F 2d 83, 271 U.S. 669.

"A national bank has no power to lend its credit to any person or corporation . . . *Bowen v. Needles Nat. Bank,* 94 F 925 36 CCA 553, certiorari denied in 20 S. Ct 1024, 176 US 682, 44 LED 637.

"It has been settled beyond controversy that a national bank, under federal Law being limited in its powers and capacity, cannot lend its credit by guaranteeing the debts of another. All such contracts entered into by its officers are ultra vires . . ." *Howard & Foster Co. v. Citizens Nat'l Bank of Union,* 133 Sup. Ct. 202, 130 SE 759 (1926).

"Any false representation of material facts made with knowledge of falsity and with intent that it shall be acted on by another in entering into contract, and which

is so acted upon, constitutes 'fraud,' and entitles party deceived to avoid contract or recover damages." ***Barnsdall Refining Corn. v. Birnam Wood Oil Co***., 92 F 26 817.

"It is not necessary for rescission of a contract that the party making the misrepresentation should have known that it was false, but recovery is allowed even though misrepresentation is innocently made, because it would be unjust to allow one who made false representations, even innocently, to retain the fruits of a bargain induced by such representations." *Whipp v. Iverson,* 43 Wis. 2d 166.

Accordingly, we now invoke the doctrine of estoppel by acquiescence, because we can prove that your coerced mandatory though illegal contract with me imposes upon you a legal and a moral duty to answer, and your silence can now be construed as a fraud. "Silence can only be equated with fraud where there is a legal or moral duty to speak or where an inquiry left unanswered would be intentionally misleading." See *U. S. v. Tweel*, 550 F.2d 297, 299 (1977), (emphasis added), quoting *U.S. v. Prudden*, 424 F.2d 1021, 1032 (1970). See also *Carmine v. Bowen*, 64 A. 932 (1906).

Government is instituted 'for the people'; not vice versa as in this case. Ref: California Constitution. The Defendant(s) have wantonly violated Constitutional precepts in the California Constitution against the Plaintiff(s).

"Extreme and outrageous conduct is not required if the emotional distress resulted from the commission of another tort." *American Velodur Metal, Inc. v. Schinabek*. 20 Mass. App. Ct. 460, 470-471 (1985).

It is not necessary for government to accept or respond, for a disavow and rescission of contractual or trust relationship to be in effect. 'Constructive Fraud' and 'Actual Fraud' can be the basis of cancellation of an agreement. Ref: *El Paso Natural Gas v. Kysar Insurance Co.*, 605 Pacific 2d 240, (1979). A case of Fraud need not be formally rescinded as a prerequisite to a right of avoidance. *Bonacci v. Massachusetts Bonding and Ins. Co.*, (1943), 58 Ca 2d 657, 664, 137 P.2d 487.

The property, supra, is EXEPT from seizure as it is a 'homestead' as plainly stated in the recorded Federal Land Patent. California Constitution. There is no bona fide lien on record from the Defendant(s).

The right to purchase property is a fundamental right of citizenship beyond the power of the state to deny to any citizen' *Beech Grove Investment v. Michigan Civil Rights Commission,* 157 North Western Reporter, 2d Series pgs 215,232. see also *Jones v. Mayer Company*, 392 U.S. 409.

Plaintiff(s) incorporate all the above with right to amend for charges. Plaintiff(s) in this action prays for the following relief:

The Plaintiff(s) in this action through the facts, Federal Law, California UCC's and case law citings which relate to the very heart of the fraudulent activity perpetrated by the aforementioned defendants hereby requests of the Court a Judgment in favor of the Plaintiff(s) as defendants are not holders in due course of the Promissory Note and thereby do not have ownership of the subject property, nor do they have standing to adjudicate action.

That the Defendant(s)' hereby return ownership to the subject property as has happened in similar cases propounded by Plaintiff(s) in these papers, unencumbered by any liens, and Defendant(s) has no right to title or interest in

[Summary of pleading] - 17

said premises or lien thereon. That the court order and adjudge that there shall be no unlawful sale or foreclosure of the subject property at 11147 Evers Avenue, Los Angeles, CA [90063] without a lawful Original Promissory Note produced to establish true ownership shall be null and void.

Defendant(s) Bank did not lend adequate consideration to form a contract under Constitutional standards. Article I sec. 10, Constitution of United States of America.

**Further violations of Federal Law:**

**Sec. 1831 n. - Accounting objectives, standards, and requirements**

**(a)** In general

**(2)** Standards

**(A)** Uniform accounting principles consistent with GAAP

Subject to the requirements of this chapter and any other provision of Federal law, the accounting principles applicable to reports or statements required to be filed with Federal banking agencies by all insured depository institutions shall be uniform and consistent with generally accepted accounting principles.

**TITLE 12--BANKS AND BANKING**

Sec. 741.6 Financial and statistical and other reports. (c) **GAAP sources.** GAAP means generally accepted accounting principles, as defined in Sec. 715.2(e) of this chapter. GAAP is distinct from GAAS, which means generally accepted auditing standards, as defined in Sec. 715.2(f) of this chapter. Authoritative sources of GAAP include, but are not limited to, pronouncements of

[Summary of pleading] - 18

the Financial Accounting Standards Board (FASB) and its predecessor organizations, the Accounting Standards Executive Committee (AcSEC) of the American Institute of Certified Public Accountants (AICPA), the FASB's Emerging Issues Task Force (EITF), and the applicable AICPA Audit and Accounting Guide.

**What does this mean?** It means the bank is bound by law to Generally Accepted Accounting Principles: to conform to them, to abide by them, to adhere to them. In other words, the law requires **whatever GAAP acknowledges as principle or fact the bank also thereby acknowledges to be principle or fact.**

These standards and principles state that the accounting IS the economic substance of an agreement of what actually did happen and therefore is declared under GAAP to take precedence over the written agreement as actual proof of how the parties performed.

"Representational Faithfulness" states: **"GAAP require that the economic substance of an event** (the accounting of it) **take precedence over its legal form** (the note) **when it is recorded or measured** (as in the examination of the loan in a court proceeding)". (see Miller, GAAS Guide, College Edition, pg.3.05 and 3.06 of record before the Court).

So if the accounting shows there were two loans: one from the borrower to the lender and then from the lender to the borrower or an exchange then **that is the equitable substance of the transaction NOT what the note or other legal forms of the agreement say** was suppose to happen.

The economic effect of an agreement on the parties to it, the **evidentiary facts** of the **equitable substance** of what actually happened in the transaction, **IS TOLD FROM THE BOOK ENTRIES OF IT.** The bank's own GAAP accounting principles to which they are bound by law to conform to and acknowledge state this. Who received an enrichment by the transaction? Who shows to be bearing a risk of a loan? What did each party provide, what did each party receive?

GAAP is saying it is **not the note** that is the actual economic substance, **the legal facts,** of the transaction, because the note cannot tell us these things, and anyone whose job it is to determine these things, such as an auditor.......... or the Court, must **of practical necessity as well as to conform to GAAP, must look to the book entry accounting** to make judgments of law and equity regarding the transaction. Because only the book entry accounting establishes the real story of what this transaction **actually was**.

Under such principles to which the bank is bound, the note and deed of trust and other legal forms of the agreement presented by the defendant as basis for its defenses against the Plaintiff as proof of its performance to support action against Plaintiff's failure of performance, by its own acknowledgement, fail as satisfactory proof of the bank's initial performance in establishing the debt or of the status of such a debt at present, as by such adherence to GAAP the bank has acknowledged the note the Plaintiff signed is only the **form of the agreement,** stating what was <u>supposed</u> to be happening in the transaction and not the **economic substance of the transaction, i.e. the accounting of what actually <u>did happen</u>.** The note does not show this as a static document. It is fixed in time

and can only show what the Plaintiff agreed to do in return for what he **believed** the defendant was going to perform.

Because of this GAAP says the book entry accounting of any transaction is the **only thing** that will show what either party has done in performance under a written legal agreement, and is the **only real evidence** of the substance of a transaction by which the performance or non-performance of parties to an obligation can be established. In an issue before the Court regarding a bank which is bound by such law and regulation, **the facts,** the **actual equitable substance of the events** of the transaction **are what the bank's own accounting principles to which they are bound by law <u>say</u> they are, <u>nothing more</u>… and <u>nothing less</u>.**

This is because the modern bank loan is an **intangible.** It operates in book entries and transfers of credit on a computer screen. This all manifests itself usually in the form of a bank check to one or more persons from the bank in behalf of the alleged borrower. Then what's behind the check or what happens in the settlement of it is more electronic book entry transfers.

We trust the Court can see the equitable substance of all this and the economic effect on the parties as to who provided what and who received what are facts **only determinable by the book entry accounting**. But although this is true, neither the Court nor the parties to the transaction even before litigation normally see the book entry accounting showing the equitable substance of what they have just done.

The only thing we generally walk away from the loan closing with we are going to hold and keep are what GAAP calls the **legal forms** of the agreement: the note, trust deed, etc. It is so in the case of the Court. The Court hears multiple cases involving contract rights under a note and other legal forms. These do not always involve the banking industry in some way but when they do, the natural tendency is to give more weight to what is familiar to us, to cling to these legal forms we are so accustomed to handling as **the substance, the facts of what has actually happened in the agreement,** and which indeed it is **suppose** to be. And even in a case such as we are about to make for dismissal where the accounting will be testified to, the tendency for the Court will be to say, **'this is just bookkeeping, accounting, number crunching'.**

And because the Court sees notes presented as evidence of fact in its routine, the Court may say, 'but this, the note, IS the substance of the agreement. These are the practical facts of what happened here in the note. And the note says or implies as understood this was a loan of the bank's own money that was already there before the transaction; that the bank is taking something they already had that was theirs and is giving it to the borrower and after they have done it they will be at a present risk to get back what they have given until he repays it.' So says or implies the note.  But to do justice to all as it has sworn to do, the honorable Court simply must establish first for itself this fact: THE SCENARIO OF WHAT THE NOTE SAYS WAS TO HAPPEN IS NOT ONLY TRUE, … IF IT IS SUPPORTED BY THE BOOK ENTRY ACCOUNTING OF IT! And in the case of a bank, bound by law to GAAP, by the bank's own requirements, regulations and acknowledgements, this may not be true as evidence and as a matter of law as the bank has already acknowledged in its GAAP principles what documents or facts take precedence over others. "Representational Faithfulness" states: "GAAP require that the economic substance of an event (the accounting of

it) take precedence over its legal form (the note) when it is recorded or measured (as in the examination of the loan in a court proceeding)". (see Miller, GAAS Guide, College Edition, pg.3.05 and 3.06 of record before the Court) As stated, in a legal dispute over such a bank loan, under GAAP, the bank has acknowledged **the note is <u>not</u> the equitable substance of <u>the facts</u> of the transaction, but the <u>book entry accounting</u> is.**

It is the book entry accounting of it that **is** the economic substance of the transaction whether it turns out to be a loan, an exchange or whatever it turns out in equity to be.

If the bank actually made a loan as the world understands a loan of something they already had, that was already theirs before they loaned it, and now they have a risk for getting it back, the book entries will certainly show it. If they are at present risk for loss of something that was theirs as basis to charge interest on a principle extended of their own consideration, the book entries will show that. And if the book entries **don't** show that, then **<u>in fact</u>, <u>in law</u>, and <u>in equity</u>, that's not what happened.** The book entry accounting **is the substance** of this transaction whatever it shows to be. Plaintiff(s) are aware it is his duty to establish this as fact before the Court and he fully intends to do so in this case at hand. So that when this has been done, the Court's job will be to discern **what the accounting shows** to be the actual transaction of what did happen and will sort out the position of the parties to the transaction in law and equity from these facts established by the accounting. And by the bank's own testimony, it is **<u>this</u> the Court will be directed to look to** tell us what the equitable economic facts are in this transaction between the parties and the facts the Court must discern as evidence and apply the law.

The Court only has two choices of what it may view as the ultimate superior or 'best evidence' in this case: the **legal forms** of the agreement; the note, bank check, and other security documents, **or, the book entry accounting of the transaction.** What we will attempt to show is the bank has already determined under GAAP, for itself and **therefore for the Court, what this will be.**

## ARGUMENT OF THE Plaintiff(s)

The Court must first grasp the economic, business, commercial and accounting **fact,** as demonstrated by numerous authoritative sources of the banking community of record before the Court that in the realm of banking and commercial paper a note/credit agreement is not just a book keeping entry asset, but **IS** a tangible commercial paper asset of money or money equivalent and may be negotiated and traded as such or held by the bank on its books as part of its asset base used to calculate its rights and powers for its purposes in the commercial world, and therefore, has a financial and equitable-entitlement value in its own right as chattel/property and is equivalent to cash in the balancing of its books for its many and varied instruments.

**Specifically we have claimed what the bank has implied as understood in its written agreement to be its own valuable consideration to obtain Plaintiff(s)' note is actually the unauthorized taking and use of it, without his knowledge, consent or written agreement and understanding it was to be so used, and the bank's fraudulent conversion of Plaintiff(s)' note as an asset into the bank, the liability to which is then 'monetized' by the bank's power to expand its credit, "create" "credit money", "checkbook money" , so, as stated by the Federal Reserve bank of Chicago, "new money is brought into**

[Summary of pleading] - 24

existence by expansion of depository institution credit." The giving of that as "the bank's" loan consideration to legally obtain Plaintiff(s)' note. We contend the bookkeeping of this loan we will request in discovery must be provided by the Defendant(s), will show that we received nothing from the bank that did not come from what the bank had first taken or borrowed from us. As we have stated:

"I came to the bank to obtain a loan or line of credit of the bank's own good and valuable consideration in the equitable understanding of the terms 'borrowing' and 'lending' and 'borrower' and 'lender' as they are used in common law and in general commerce in society: that being, the value of what is loaned is the value and extent of the risk to the party who loaned it and therefore equitably justifies the terms and collateral security required of the borrower to receive the loan.

In return for the loan, to offset the purported equitable risk of loss and liability to the 'monetized' by the bank's power to expand its credit, "create" "credit money", "checkbook money", so, as stated by the Federal Reserve bank of Chicago, "new money is brought into existence by expansion of depository institution credit." The giving of that as "the bank's" loan consideration to legally obtain Plaintiff(s)' note. I contend with the bookkeeping of this loan I will request in discovery must be provided by the Defendant(s), will show that I received nothing from the bank that did not come from what the bank had first taken or borrowed from me. As I have stated:

In return for the loan, to offset the purported equitable risk of loss and liability to the bank's existing book assets and cash reserves during the term of the

loan for the money it would have paid out until it was repaid, I agreed to the terms of repayment.

In the transaction, as part of what I was told to do to receive the loan, I was first induced to sign the note agreeing to the terms based on the purported risk, implying that for a loan or line of credit I was receiving I was agreeing to pay it back under these terms when **as yet** I had **received nothing** from the bank.

They had written the agreement and I believed they would not cause me to make any fraudulent or untrue statements in any of the documents I was signing. But by this, their institution provided for **an express false affirmation** in the loan agreement that the institution had already provided the loan funds to myself, the nominal borrower. This false affirmation converted the alleged mere security into commercial paper by giving it the appearance of an unconditional promise/receipt for consideration already delivered.

And by so doing, the bank may have committed forgery on myself as attested by these citations:

"Forgery is an attempt to defraud a person of his property, whether real **or personal,** by the making of **a false and fraudulent written instrument of title, or a false evidence of indebtedness and the like."** *State v. McCray,* 176 P. 418, 420, 15 Okl. Cr. 316.

Forgery is **the falsely making** or materially altering, with intent to defraud, and writing, **which, if genuine, might apparently be of legal efficacy or the foundation of a legal liability,** or the fraudulent making or alteration of a writing **to the prejudice of another man's rights.** *Parrish v. Hewitt,* 18 S.E. 2d 141, 142, 220 N.C. 708,

And further, by so doing have acted to defraud me, the alleged borrower to gain an unjust enrichment from my note/credit agreement using it for some purpose not told to me and not agreed to. From reading the banking industries own authoritative sources, it is apparent the bank then took my signed note/credit agreement, without my knowledge or consent or agreement to be used as such, and made a fraudulent conversion of it into the bank deposited as an asset on its books of such commercial paper of its face value. The bank, in effect, obtained the equitable and financial substance of an alleged-<u>loan, gift or taking</u> **from myself, the borrower.** At the instant this occurred, their institution obtained an unearned and unjust enrichment/ augmentation of its assets, in the form of this *commercial paper* which paper has a financial and equitable-entitlement value **in its own right** as chattel/property, while myself, the alleged borrower, experienced a likewise instantaneous and commensurate net loss equal to the amount of the alleged-loan, as the burden was now incumbent upon me to pay it. This created the actual and/or constructive liability in equity owing by the institution to myself, the alleged-borrower (i.e., even if it were not recorded).

Title 12 USC Sect. 1813, **defines the term "deposit" to mean:**

**...the unpaid balance of money or its equivalent received or held by a bank or savings association in the usual course of business and for which it has given or is obligated to give credit, either conditionally or unconditionally, to a commercial, checking, savings, time, or thrift account, or which is evidenced by its certificate of deposit, thrift certificate, investment certificate, certificate of indebtedness, or other similar name, or a check or draft drawn against a deposit account and certified by the bank or savings association, or a letter of credit or a traveler's check on which the bank or savings association is primarily liable:**

[Summary of pleading] - 27

Provided, that, without limiting the generality of the term "money or its equivalent", **any such account** or instrument **must be regarded as evidencing the receipt of the equivalent of money when credited or issued in exchange for checks or drafts or <u>for a promissory note</u>** upon which the person obtaining any such credit or instrument is primarily or secondarily liable, or for a charge against a deposit account, or in settlement of checks, drafts, or other instruments forwarded to such bank or savings association for collection.

<u>POINT OF INTEREST</u> page 6 Federal Reserve Bank of Chicago, **Banks and Deposit Creation:** "This deposit creation activity, essentially **creating money........is just as much a deposit as one might make by <u>pushing a ten dollar bill through the teller's widow.</u>"** When banks create checkbook deposits, they create money as well as credit since **these deposits are part of the money supply." "Money and Banking"** by economist, author, banking instructor, and professor, David H. Friedman, published as a textbook for bankers by the American Bankers Association, states on page 80, 81

"When a commercial bank makes a business loan, **it accepts as an asset the borrower's debt obligation** (the promise to repay), and **creates a liability on its books in the form of a demand deposit in the amount of the loan........a demand deposit balance for the merchant who received the loan. This money creation <u>increased</u> the bank's assets <u>and</u> liabilities......Thus, the loan did not simply bring about a redistribution of assets."**

<u>POINT OF INTEREST</u> <u>Two Faces of Debt,</u> Federal Reserve Bank of Chicago, Page 19, Paragraphs 3-5, **a money creation function:**

[Summary of pleading] - 28

"In exchange for the note or security, the lending or investing institution credits the depositor's account or gives a check that can be deposited at yet another depository institution. In this case, **no one else loses a deposit. The total of currency and checkable deposits -- the money supply -- is increased. New money has been brought into existence by expansion of depository institution credit.** Such newly created funds are in addition to funds that all financial institutions provide in their operations as intermediaries between savers and users of savings. "Their institution itself also creates an acknowledged (recorded) commensurate liability in equity to myself, the alleged-borrower, as a means by which to avoid taxation on **the otherwise taxable income** received as the nominal loan **from** the alleged-borrower. The liability in equity balances or zeros-out the bank's (otherwise) tax liability. Indeed, the promissory note was now inherent to **both** a chattel mortgage of **itself** as a commercial paper asset to originate and fund the loan; **and,** as the **land mortgage** it represents in its written agreement of its same value, it is commercial paper in its own right after the loan has been consummated, and the alleged lender may potentially profit from it a second time selling or discounting the loan to another institution, so that the total potential commercial value received from the Plaintiff by the bank in the transaction could be almost **twice** its written face. My note in the bank as an asset on its books of commercial paper of its face value **creates an increase** in its book entry assets and payable liability credits of that same amount **against** which the bank wrote its loan proceeds checks that were to stand as **the bank's <u>own</u> good and valuable consideration** to me of the loan it had promised to make, **legally necessary** for it to **obtain my note,** but which the bank **had already used** to fund its book entry loan and balance its books **without** creating other book entry liabilities to its other assets and deposits to fund it.

[Summary of pleading] - 29

Obviously, that which was originated **by** and **from** the note **cannot** be the bank's own first consideration to have legally obtained the note. **The bank had given me** no value **to gain my note to have so used it to** create **its alleged consideration it would finally give,** therefore, **the equity** was brought to this transaction as **the legal and actual property of myself, the alleged borrower,** but **the written agreement** is crafted to reflect a **debtor/creditor relationship**. The **source** of equity is further acknowledged by the bank itself in the BORROWER COVENANTS the alleged borrower is asked to avow to the bank in its own deed of trust written and put before him by the bank which states "BORROWER COVENANTS that Borrower is **lawfully seized of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered...."**

At this point in the property transfer closing NOTHING had been tendered by the alleged borrower/ buyer to the closing attorney for his escrow management of the different aspects of the closing EXCEPT the borrower's promissory note. No loan proceeds check had been tendered to appropriate parties to have satisfied any liens against the property or to the seller as good and valuable consideration for him to have transferred the property to the alleged borrower/buyer, both of which **must be counted to have happened in the legal sequence of events for the borrower to be able to attest to his alleged lender.** That Borrower is **lawfully seized of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered....",** thus establishing the tangible value to the bank of the borrower's note **as an asset of money or money equivalent,** of *commercial paper* with a financial and equitable-entitlement value in its own right with which the funds to pay these other parties can now be originated and, in the escrow management of the closing attorney, is

consummation of the legal events of the property transfer for it to be legally completed.

Further, I was again deceived by the bank and its attorneys and fraudulently induced and persuaded to make such conveyance under coercion I had to do so **to become** the lawful titled owner when, as stated above, the BORROWER COVENANT of the trust deed I was asked to sign says, **I was already then fully and lawfully seized of the property without encumbrance and therefore without obligation to convey it to anyone in any manner whatsoever!**

And by so doing the bank and bank attorneys may have again committed forgery on myself in the transaction as attested again by these references: Forgery is **an attempt to defraud a person of his property**, whether real or personal, **by the making of** a false and fraudulent written instrument of title, or **a false evidence of indebtedness and the like.** *State v. McCray,* 176 P. 418, 420, 15 Okl. Cr. 316

Forgery is **the falsely making** or materially altering, **with intent to** defraud, and **writing, which, if genuine, might apparently be of legal efficacy or the foundation of a legal liability, or the fraudulent making or alteration of a writing to the prejudice of another man's rights.** *Parrish v. Hewitt,* 18 S.E.2d 141, 142, 220 N.C. 708

The bank which put together the agreement, **knew** they were going to write the loan proceeds check offset by the commercial paper asset provided by the borrower **without** having to create book entry liabilities **on its other deposits and assets to make the loan,** so when the borrower's note was signed and tendered,

for practical considerations from the bank attorney's perspective, the sale transaction had been accomplished.

Verifiability and other GAAP principles will reveal the bank, although the provider of credit services, was **not** the lender as verified by accounting for this loan agreement as, under GAAP, it may be seen the bank **did not** lend **any preexisting** asset, money, capital, or thing of value **of its own or its depositors** in the transaction and therefore has failed to perform **in equity and in law** its obligations to myself, the alleged borrower, under the terms of its own agreement. **As to the risk of the transaction to the bank.** The bank wrote loan proceeds, checks to parties who had a lien hold interest or other interest in the transaction and to the Seller of the property in my behalf. I believe the record shows these benefiting parties **deposited** the loan proceeds checks they received into their respective bank's which recorded **a book entry** transfer of credit into their respective accounts for that amount which were charged as **book entry debits** against the general accounts of defendant's bank. Defendant's bank had **already received** an **increase** of its book entry credits and payable liabilities totaling those same amounts from the crediting of my note into the bank as a money or money equivalent commercial paper asset of that same value when the sale closing was held, **which has <u>directly</u> offset the debiting of the bank's accounts in settlement of all loan proceeds checks dispersed in my behalf as funding of the bank's alleged loan to me. So that once these transfers of book entry credit <u>out</u> of defendant's bank <u>to</u> the other respective banks had been made, and the demand deposit liabilities on the loan proceeds account <u>satisfied and transferred</u> to other banks and/or other accounts, <u>the risk to defendant's bank for recovery of the alleged 'principle' of the loan ceased.</u>**

[Summary of pleading] - 32

To my knowledge none of the loan proceeds were demanded in cash as good and valuable consideration of the bank's cash reserves creating an equitable loss and risk of liability on the bank for recovery from the borrower under the terms of the note for those amounts of the alleged loan.

A check is:

"A commercial device intended for use as **a temporary expedient** <u>for actual Money</u>...***Kennedy v. Jones*** *140 Ga. 302: 78 S.E. 1069, 1070.*

"A check is merely **an order** on a bank to pay money". <u>***Young v. Hembree***</u> *73 P.2d 393.*

"Money" "In usual and ordinary acceptation means gold, silver, or paper money used as circulating medium of exchange, and does **not** embrace notes, bonds, evidences of debt, or other personal or real estate. <u>***Lane v. Railey***</u>*, 133 S.W. 2d, 74, 79, 81.*

Checks, drafts, money orders and bank notes are **not** lawful money of the United States". <u>***State v. Mellon,***</u> *73 Pac. 321, 43 Ore. 168*. ed.

Because the checks were **not** cashed on the bank's cash reserves as they might have been, and because the book entry liability debits it sustained when the checks were presented from the various banks were **offset** by the book entry **deposit** of my note as a commercial paper **asset of the same value I had already provided to the transaction,** when all was said and done the bank bore **no continuing equitable risk of loss to recover** anything of its own book entry

assets as loan consideration extended, or loss to its cash reserves of loan
consideration extended, purported as basis for the terms of its agreement. This of
course changes the equitable cost and risk of the 'loan' to the bank from that
purported as a basis for the terms and giving of collateral security I was induced to
accept to obtain the loan.

Independent Certified Public Accountants audit banks, and act like police to
protect the public. A CPA must follow GAAP audit guidelines, which require the
CPA to **know** the **intent** of the borrower's agreement and be sure **the agreement
and economic effect of the bank bookkeeping entries are in agreement.**

What is the **intent** of both parties? Intent can be stated as simply as whether
the bank led the alleged borrower to believe the bank would loan **something of
value that was already its own** if the borrower agreed to sign the agreement/note
to repay the loan? What was the plaintiff's intent in signing the agreement? It was
simply to agree to repay the money loaned to him, and to accept the terms for
repayment very favorable to the bank because he believed the bank in its
advertising and in the agreement that the bank was **loaning something of value
that was already its own** and that making the **loan** carried a very real **risk** to the
bank that they might not get it back. Thereby justifying in the mind of the
borrower and gaining his acceptance of the tremendous profit the bank stood to
make from the transaction when fully repaid. What was the **bank's** intent in
writing the agreement?  Despite their protestations to the contrary, I believe the
bank's own bookkeeping entries to the transaction will show the bank **intended** to
receive actual money or money equivalent value from the alleged borrower's
approved credit application and/or promissory note **for free**, depositing it into
**their** bank as a commercial paper book entry asset of its face worth, thereby

expanding the book entry assets and liabilities of the bank by that amount, and then from these, returning it back to the alleged borrower as a **'loan'** of 'equitable risk of consideration' and 'principle' from the bank. In fact, as the book entry transactions and transfers which the alleged 'loan' will turn out to be, is **not a loan** but an **exchange:** the **plaintiff's** approved credit application and/or note bank into a commercial paper money or money equivalent asset of the **same** face value and returning these funds thus originated as book entry credits and payable liabilities back to **the customer from whence the application and/or note originated.** If Plaintiff, the alleged borrower, knew the bank loaned nothing of value that had been its own prior to creation in Plaintiff's transaction which ultimately carried with it **no risk** to the bank, would Plaintiff have made the agreement on those terms? The Plaintiff, the bank's customer, had **no intention** for the bank to use Plaintiff's **approved credit application and/or note, without Plaintiff's knowledge or consent,** to fund the very **'loan'** the Plaintiff thought was coming **from the bank's own existing assets.** This was not **Plaintiff's intent** in making the agreement but what **the bank** did. Plaintiff, as the borrower, believed the loan was financed by other depositors or the deposited into the bank and the **conversion** of it by the bank's own assets or from the Federal Reserve. Plaintiff, the alleged borrower, had no idea in the book entries of it. Plaintiff may have financed his own loan and now having to pay back alleged principal and interest to the bank that, in equity, they never had to pay out and who never provided to the transaction anything that had been their own **prior to their use of Plaintiff's, the borrower, to create it** and for which the bank has turned out to carry **no risk.** The bank knew their intent was; the bank wrote the agreement they advertised. They claimed there was a loan when in fact the economics prove no loan existed. That there was an exchange and a charge to the customer for the risks of a loan by the terms of repayment as if there was a true loan of the bank's existing funds before the transaction, Plaintiff believes shows the bank intended to make false

statements and representations, to **conceal** the exchange nature of the agreement
with the intent to reinforce a false impression and thereby **defraud its customer**,
and failed to correct a false impression of their true intent in the written agreement
and advertising. **If the bank did not loan anything of its own prior to the**
**transaction to the customer; gave no consideration of value that was its own,**
**prior to its creation in the transaction from the customer's own credit**
**approval, to have obtained the customer's promise to pay, the**
**note/agreement is not valid, and not enforceable. Apart from the issue of**
**whether the money allegedly lent was technically ever the bank's or not, the**
**bookkeeping entries show the gross and fraudulent misrepresentation by the**
**bank in its agreement and advertising to its customers of the true nature of**
**the actual banking transaction that took place and of the bank's actual risk**
**involved in it. This is a constructive fraud against equity at the core of this**
**financial transaction, fraudulent inducement and misrepresentation,**
**withholding of material fact, and unjust enrichment by fraudulent**
**conversion of an asset by the bank; and the perpetration of falsehood by the**
**Defendant, deception, and coercion and inducement to make false statements,**
**and many other breaches of contract and/or violation of federal or state law**
**any one of which act to void this agreement from the beginning and any**
**obligations Plaintiff allegedly has under it.**

Plaintiff paid cash money of alleged 'principle' with compound interest on
the full face of the note as if 100% of the alleged 'principle' were a loss to the
book entry assets or the cash reserves of the bank as loan consideration dispersed
and of risk to the bank to recover that would serve as equitable basis for the terms
of the note/credit agreement the bank had induced Plaintiff to accept and has been
enforcing against Plaintiff this entire time. What the bookkeeping will show, by
the augmentation and enrichment of its book entry assets provided from Plaintiff,

the borrower, the defendant presently has **no such continuing equitable risk of loss to recover any such principle paid out or credited as loan consideration in this transaction. The Defendant has been charging Plaintiff principle and interest on a loan in equity it ultimately did not have to make as a cash loan, book entry loan or otherwise, for a risk in equity it turns out not to have had but again, has been charging Plaintiff as if it did throughout, and it is the Plaintiff who should receive money back from the Defendant, of payments paid under this** spurious agreement instead of the Defendant receiving further payments. From the legal documents and basic bookkeeping of the transaction possessed by the Defendant we have sought, and by testimony of bank bookkeeping and loan department employees who have firsthand knowledge of the loan process we would question, we may conclude any one or all of three things:

**In equity,** the bank has not performed as agreed such as to justify the terms of the agreement encumbered upon the borrower;

**In accounting,** a loan of the bank's own good and valuable consideration, by accounting definition, has not taken place either of book entry debits or cash consideration paid which the bank agreed to make and implied it was making as basis for the terms of the agreement encumbered upon the borrower;

**And in factual risk** of the transaction to the bank either by book entry debit loss or good and valuable cash consideration paid out of its reserves, it has **not** sustained that **risk** which the agreement represented to the borrower as basis for its terms he was induced to accept.

Further, Plaintiff(s)' note/credit agreement used in this way was done **without** Plaintiff(s)' knowledge or agreement, as Plaintiff will testify, and which the agreement did not disclose in its truth in lending requirements the bank wanted to use it for this purpose, and which the book keeping and/or other testimony as evidence will show, in equity, Plaintiff received **nothing from the bank** for them to legally gain Plaintiff's note/agreement to do anything with it since the only consideration Plaintiff received from the Defendant as its loan was **originated** on its books from Plaintiff's note/agreement  the Defendant had borrowed or taken from Plaintiff. As stated, the Defendant has not had to perform a loan of its own good and valuable consideration for which it has suffered an actual loss of its alleged 'principle' with equivalent risk of non-recovery **that has not been offset by the augmentation and enrichment of its assets provided from Plaintiff by the deposit of Plaintiff's note/credit agreement <u>into the bank.</u>** The bank, in the dispersion and settlement of its loan checks by similar book entry transfer <u>out of the bank</u> has borne **no continuing equitable risk of loss to recover** anything of its own book entry assets as loan consideration extended as 'principle' <u>or loss </u>to its cash reserves of loan consideration extended.

And therefore properly has no claim against the Plaintiff.

**We believe the book entries say this is what has occurred. Only the accounting shows this, and that is why we have sought it. The accounting will show in <u>this</u> loan transaction what happened from the time the bank received Plaintiff's signed note/credit agreement to the time the credit card obligations were settled, where the money came from and who or what, in equity, provided the assets and deposit money credits that were dispersed as the "bank's loan." What Defendant has willingly provided and are required by law and GAAP to prove it's performance in attempting to establish a debt owed to make their case, Plaintiff demands the same be produced to establish**

[Summary of pleading] - 38

their own performance and loss as a cause for action in his defenses and the making of his case.

## REMEDY AND RECOURSE CONCLUSION

Wherefore, premises considered, Plaintiff moves the Court to declare the same and, and under the rule of "best evidence", to require both parties to this dispute to submit the respective portions of the accounting and bookkeeping records of these transactions as they may apply in support of any allegations of fact, and in corroboration of other evidence presented before such other evidence will be admitted by the Court as evidence toward proof of allegations made.

Parallel authority in State law(s) for this action, is referenced in federal law at:

    28 USC 2201 Creation of Remedy

    28 USC 1651 All Writs Act, Judiciary Act of 1789

    18 USC 3231 The district courts of the U.S. shall have original jurisdiction.

That being the DCUS and not the USDC

    28 USC 1331 Federal question

THE SERVICER AND BUYER, claimed title to property illegally and have not paid property taxes on the land at bar.

The foreclosure statute is not bonded and is only administrative.

    Defendant(s) are operating without a Charter violating County government and the U.S. Sup. Ct. ruling to keep the County government in check. (ref) ***Norton***

*v. Shelby County*, 118 U.S. 425 (1886) Shepardized and not overturned

County Agent(s), THE BANKS, lawyers, and the Bench are operating a defacto seizure operation, not a dejure one; having no Charter.

Defendant(s) have not filed an affidavit of obligation on the property at bar, and therefore do not have a bona fide lien/debt to place on Plaintiff.

Foreclosure by summary judgment without a commercial bond is a violation of commercial law. As a result of the Defendants' extreme and outrageous conduct, Plaintiff was, is, and with a high degree of likelihood, will continue to be emotionally distressed due to the intentional commission of multitudinous act(s) of trespass against family members safety, private property, personal belongings;

That Plaintiff further objects to any and all Note allegation(s) of the Lender BANKS, all defendants *and Henry M. Paulson, Jr. dba the Secretary of the U.S. Treasury did use Residential property as collateral*, and its agent(s) who knew that No Lawful Consideration of 31 USC 371 Money of Account did/can exist; thus, Lender did 'Act Beyond Scope of Corporate Powers' in 'Bank-Credit-Loan' exacting both Principle and Interest by 'Constructive Fraud Without Scienter' (437 SW 2d 20, 28); in Payments of $ unknown, to date.

Plaintiff objects to alleged Lender's "Bad-Check-Loan-Of-Bank-Credit", imposed by 'Constructive Fraud without Scienter' (437 SW2d 20, 28) and further contrary to Court Decisions:" Banks cannot loan *Credit*" (181 Wis. 172; 144 SW 501, 151, 69 SE 1123).

Plaintiff incorporates all the above with right to amend for charges.

## COUNTS CHARGED

I        Collection attempts under color of law

II       Conspiracy to commit extortion

III      Securities Fraud

IV      Conversion of Funds

V       42 USC civil right(s) breaches

VI      Deprivation of Constitutional Rights and  Privileges 42 U.S.C. 1983)

VII     Conspiracy To Deprive Persons Of Equal Protection Of The Laws (42 U.S.C. 1985)

VIII    Deprivation of Equal Rights Under the Law (42 U.S.C. 1981)

IX      Conspiracy Against Rights (18 U.S.C. 241)

X       Deprivation of Rights Under Color of Law (18 U.S.C. 242)

XI      False Statements and Representation (18 U.S.C. 1001)

Further Defendant(s) and all have failed to observe the federal Uniform Commercial Code at U.C.C. 3-501(a) and U.C.C. 3-501(b)(2). U.C.C. 3-501 at subsection 1 states that "Presentment" means a demand made by or on behalf of a person entitled to enforce an instrument. The instrument in this case is the original note. And a person entitled to enforce the instrument in this case is the "Note

Holder" as described in the original note. If the Bank did not deposit the original note with AMERICA'S SERVICING COMPANY; GMAC MORTGAGE; FIRST AMERICAN LOANSTAR TRUSTEE SERVICES did not hold the original note, then neither AMERICA'S SERVICING COMPANY; GMAC MORTGAGE; FIRST AMERICAN LOANSTAR TRUSTEE SERVICES, was a person entitled to enforce the instrument because neither AMERICA'S SERVICING COMPANY; GMAC MORTGAGE; FIRST AMERICAN LOANSTAR TRUSTEE SERVICES nor any other entity was the Note Holder as described in the original Note, and because neither AMERICA'S SERVICING COMPANY; GMAC MORTGAGE; FIRST AMERICAN LOANSTAR TRUSTEE SERVICES was the Note Holder, neither AMERICA'S SERVICING COMPANY; GMAC MORTGAGE; FIRST AMERICAN LOANSTAR TRUSTEE SERVICES were entitled to write up a Declaration of Default and Demand for Sale and deposit it in a mortgage foreclosure. If AMERICA'S SERVICING COMPANY; GMAC MORTGAGE; FIRST AMERICAN LOANSTAR TRUSTEE SERVICES, did not in fact hold the original note, then neither AMERICA'S SERVICING COMPANY; GMAC MORTGAGE; FIRST AMERICAN LOANSTAR TRUSTEE SERVICES, were a person entitled to enforce the Deed of Trust and take or otherwise dispose of subject property.

U.C.C. 3-501(b) (2) states that upon demand of the person, to whom presentment is made, the person making presentment must exhibit the instrument, give reasonable identification and, if presentment is made on behalf of another person, reasonable evidence of authority to do so, and sign a receipt on the instrument for any payment made.

Neither AMERICA'S SERVICING COMPANY; GMAC MORTGAGE; FIRST AMERICAN LOANSTAR TRUSTEE SERVICES, ever provided the Plaintiff's with a sworn statement verifying that AMERICA'S SERVICING

COMPANY; GMAC MORTGAGE; FIRST AMERICAN LOANSTAR TRUSTEE SERVICES, were the Note Holder, the holder in due course of the original instrument, the Note, and verifying that AMERICA'S SERVICING COMPANY; GMAC MORTGAGE; FIRST AMERICAN LOANSTAR TRUSTEE SERVICES, were thus a person entitled to enforce the original instrument and collect a debt pursuant to the original instruments.

Pursuant to Covenant 16 of the Deed of Trust and federal law, the failure by the "BANKS" to explicitly state that they had deposited the note with anyone, rather than generally and vaguely state that all documents evidencing obligations were deposited with the servicer, whomever that may be, might make the servicer and its offices subject to fine and imprisonment under U.S.C. Title 18 Section 1001 which states that whoever knowingly and willfully falsifies, conceals or covers up by any trick, scheme or device a material fact; makes any materially false, fictitious, or fraudulent statement or representation; or makes or uses any false writing or document knowing the same to contain any materially false, fictitious, or fraudulent statement or entry; shall be fined under this Title $10,000 or imprisoned not more than 5 years, or both.

And pursuant to Covenant 16 of the Deed of Trust and to federal law, the fact that nobody had mailed to Plaintiff the Notice of Breach with the general and vague statement that all documents evidencing obligations were deposited with the servicer, rather than the explicit statement that the BANK had deposited with the servicer the note, might make the servicer and its officers subject to fine and imprisonment under U.S.C. Title 18 Section 1341 which states that whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretense for the purpose of executing such scheme or artifice or attempting so to do, places in any post office or authorized depository for mail matter, any matter or thing whatever

to be sent or delivered by the Postal Service, or deposits or causes to be deposited any matter or thing whatever to be sent or delivered by any private or commercial interstate carrier, or takes or receives there from, any such matter or thing, or knowingly causes to be delivered by mail or such carrier according to the direction thereon, or at the place at which it is directed to be delivered by the person to whom it is addressed, any such matter or thing, shall be fined under this title $10,000 or imprisoned not more than 20 years or both.

Without validation of the debt and without the presence of the original instrument, the debt might stand as invalid and the enforcement of the Deed of Trust, foreclosure on the mortgage and sale of said property covered by the Deed of Trust might not have legally taken place.

Therefore any sale that has taken place might be an illegal, fraudulent transaction by all parties involved possibly resulting in the fraudulent conversion and fraudulent conveyance of Plaintiff's property for the unjust enrichment of Defendant's.

Because the sale might have been a fraudulent transaction involving fraudulent conversion, fraudulent conveyance and unjust enrichment, Defendant(s) might not be the legal owner of the property as claimed.

This court has an obligation to sign the order to stop the TRUSTEE SALE on the subject property in the interest of justice as the Plaintiff has attempted to resolve this with the alleged mortgage holder to no avail and therefore is filing this suit to recover requested property under GAAP, TILA, RESPA, and CUCC.

The Plaintiff(s) requests that the Court shall uphold the Constitution and all laws therein.

This is truly a case of violation of Law on the part of the Defendant(s) and all involved.

**Therefore Plaintiff(s) requests of this court the following:**

Deny restitution and possession of said premises to Defendant(s) for lack of standing by Defendant(s)', as both seller and buyer of said premises, to state a claim for which relief can be granted.

Deny a WRIT OF RESTITUTION to Defendant(s) for lack of standing by Defendant(s), as both seller and buyer of said premises, to state a claim for which relief can be granted.

Declare the entire mortgage foreclosure procedure and sale unduly conducted and void for lack of standing by Defendant(s), as both seller and buyer of said premises, to state a claim for which relief can be granted.

Declare void the DECLARATION OF DEFAULT AND DEMAND FOR SALE by the servicer for lack of standing by Defendant(s), as both seller and buyer of said premises, to state a claim for which relief can be granted.

Declare void any NOTICE OF BREACH AND DEFAULT AND ELECTION TO CAUSE SALE OF PROPERTY by the servicer, for lack of standing by Defendant, as both seller and buyer of said premises, to state a claim for which relief can be granted.

Declare void the NOTICE OF TRUSTEE'S SALE by the servicer for lack of standing by Defendant, as both seller and buyer of said premises, to state a claim for which relief can be granted.

Declare void any TRUSTEE'S DEED UPON SALE by the servicer for lack of standing by Defendant, as both seller and buyer of said premises, to state a claim for which relief can be granted.

Declare void any 3-DAY NOTICE TO QUIT for lack of standing by Defendant, as both seller and buyer of said premises, to state a claim for which relief can be granted.

Dated: 04/25/09

James/Shannon

Pursuant to 28 U.S.C. 1746, I, James Shannon, certify under the penalties of Perjury that the foregoing is true and correct to the best of my ability.

## MANDATORY NOTICE

Please take mandatory notice (Federal Rules of Evidence 201(d)) that Plaintiff(s) have a lawful right to proceed without cost, based upon the following law:

The U.S. Supreme Court has ruled that a natural individual entitled to relief is "entitled to free access to its judicial tribunals and public offices in every State in the Union (2 Black 620, see also *Crandell v. Nevada*, 6 Wall 35). Plaintiff should not be charged fees, or costs for the lawful and constitutional right to petition this court in this matter in which he is entitled to relief, as it appears that the filing fee rule was originally implemented for fictions and subjects of the State and should not be applied to the Plaintiff who is a natural individual and entitled to relief (*Hale v. Henkel*) 201 U.S. 43

*NAACP v. Button*, 371 U.S. 415); *United Mineworkers of America v. Gibbs*, 383 U.S. 715; and *Johnson v. Avery*, 89 S. Ct. 747 (1969) Members of groups who are competent non-lawyers can assist other members of the group achieve the goals of the group in court without being charged with "unauthorized practice of law."

*Brotherhood of Trainmen v. Virginia ex rel. Virginia State Bar*, 377 U.S. 1; v. *Wainwright*, 372 U.S. 335; *Argersinger v. Hamlin, Sheriff* 407 U.S. 425 Litigants can be assisted by unlicensed laymen during judicial proceedings.

# EXHIBIT A



# THE FAIR DEBT COLLECTION PRACTICES ACT

## As amended by Pub. L. 109-351, §§ 801-02, 120 Stat. 1966 (2006)

As a public service, the staff of the Federal Trade Commission (FTC) has prepared the following complete text of the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. §§ 1692-1692p.

Please note that the format of the text differs in minor ways from the U.S. Code and West's U.S. Code Annotated. For example, this version uses FDCPA section numbers in the headings. In addition, the relevant U.S. Code citation is included with each section heading. Although the staff has made every effort to transcribe the statutory material accurately, this compendium is intended as a convenience for the public and not a substitute for the text in the U.S. Code.

## TABLE OF CONTENTS

§ 801   Short title
§ 802   Congressional findings and declaration of purpose
§ 803   Definitions
§ 804   Acquisition of location information
§ 805   Communication in connection with debt collection
§ 806   Harassment or abuse
§ 807   False or misleading representations
§ 808   Unfair practices
§ 809   Validation of debts
§ 810   Multiple debts
§ 811   Legal actions by debt collectors
§ 812   Furnishing certain deceptive forms
§ 813   Civil liability
§ 814   Administrative enforcement
§ 815   Reports to Congress by the Commission
§ 816   Relation to State laws
§ 817   Exemption for State regulation
§ 818   Exception for certain bad check enforcement programs operated by private entities
§ 819   Effective date

15 USC 1601 note

## § 801. Short Title

This title may be cited as the "Fair Debt Collection Practices Act."

15 USC 1692

## § 802. Congressional findings and declaration of purpose

(a) There is abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors. Abusive debt collection practices contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy.

(b) Existing laws and procedures for redressing these injuries are inadequate to protect consumers.

(c) Means other than misrepresentation or other abusive debt collection practices are available for the effective collection of debts.

(d) Abusive debt collection practices are carried on to a substantial extent in interstate commerce and through means and instrumentalities of such commerce. Even where abusive debt collection practices are purely intrastate in character, they nevertheless directly affect interstate commerce.

(e) It is the purpose of this title to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses.

15 USC 1692a

## § 803. Definitions

As used in this title—

(1) The term "Commission" means the Federal Trade Commission.

(2) The term "communication" means the conveying of information regarding a debt directly or indirectly to any person through any medium.

(3) The term "consumer" means any natural person obligated or allegedly obligated to pay any debt.

(4) The term "creditor" means any person who offers or extends credit creating a debt or to whom a debt is owed, but such term does not include any person to the extent that he receives an assignment or transfer of a debt in default solely for the purpose of facilitating collection of such debt for another.

(5) The term "debt" means any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment.

(6) The term "debt collector" means any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. Notwithstanding the exclusion provided by clause (F) of the last sentence of this paragraph, the term includes any creditor who, in the process of collecting his own debts, uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts. For the purpose of section 808(6), such term also includes any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the enforcement of security interests. The term does not include—

(A) any officer or employee of a creditor while, in the name of the creditor, collecting debts for such creditor;

(B) any person while acting as a debt collector for another person, both of whom are related by common ownership or affiliated by corporate control, if the person acting as a debt collector does so only

for persons to whom it is so related or affiliated and if the principal business of such person is not the collection of debts;

(C) any officer or employee of the United States or any State to the extent that collecting or attempting to collect any debt is in the performance of his official duties;

(D) any person while serving or attempting to serve legal process on any other person in connection with the judicial enforcement of any debt;

(E) any nonprofit organization which, at the request of consumers, performs bona fide consumer credit counseling and assists consumers in the liquidation of their debts by receiving payments from such consumers and distributing such amounts to creditors; and

(F) any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity

   (i) is incidental to a bona fide fiduciary obligation or a bona fide escrow arrangement;

   (ii) concerns a debt which was originated by such person;

   (iii) concerns a debt which was not in default at the time it was obtained by such person; or

   (iv) concerns a debt obtained by such person as a secured party in a commercial credit transaction involving the creditor.

(7) The term "location information" means a consumer's place of abode and his telephone number at such place, or his place of employment.

(8) The term "State" means any State, territory, or possession of the United States, the District of Columbia, the Commonwealth of Puerto Rico, or any political subdivision of any of the foregoing.

## § 804. Acquisition of location information

15 USC 1692b

Any debt collector communicating with any person other than the consumer for the purpose of acquiring location information about the consumer shall—

(1) identify himself, state that he is confirming or correcting location information concerning the consumer, and, only if expressly requested, identify his employer;

(2) not state that such consumer owes any debt;

(3) not communicate with any such person more than once unless requested to do so by such person or unless the debt collector reasonably believes that the earlier response of such person is erroneous or incomplete and that such person now has correct or complete location information;

(4) not communicate by post card;

(5) not use any language or symbol on any envelope or in the contents of any communication effected by the mails or telegram that indicates that the debt collector is in the debt collection business or that the communication relates to the collection of a debt; and

(6) after the debt collector knows the consumer is represented by an attorney with regard to the subject debt and has knowledge of, or can readily ascertain, such attorney's name and address, not communicate with any person other than that attorney, unless the attorney fails to respond within a reasonable period of time to the communication from the debt collector.

## § 805. Communication in connection with debt collection

15 USC 1692c

(a) COMMUNICATION WITH THE CONSUMER GENERALLY. Without the prior consent of the consumer given directly to the debt collector or the express permission of a court of competent jurisdiction, a debt collector may not communicate with a consumer in connection with the collection of any debt—

(1) at any unusual time or place or a time or place known or which should be known to be inconvenient to the

consumer. In the absence of knowledge of circumstances to the contrary, a debt collector shall assume that the convenient time for communicating with a consumer is after 8 o'clock antimeridian and before 9 o'clock postmeridian, local time at the consumer's location;

(2) if the debt collector knows the consumer is represented by an attorney with respect to such debt and has knowledge of, or can readily ascertain, such attorney's name and address, unless the attorney fails to respond within a reasonable period of time to a communication from the debt collector or unless the attorney consents to direct communication with the consumer; or

(3) at the consumer's place of employment if the debt collector knows or has reason to know that the consumer's employer prohibits the consumer from receiving such communication.

(b) COMMUNICATION WITH THIRD PARTIES. Except as provided in section 804, without the prior consent of the consumer given directly to the debt collector, or the express permission of a court of competent jurisdiction, or as reasonably necessary to effectuate a postjudgment judicial remedy, a debt collector may not communicate, in connection with the collection of any debt, with any person other than a consumer, his attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector.

(c) CEASING COMMUNICATION.  If a consumer notifies a debt collector in writing that the consumer refuses to pay a debt or that the consumer wishes the debt collector to cease further communication with the consumer, the debt collector shall not communicate further with the consumer with respect to such debt, except—

(1) to advise the consumer that the debt collector's further efforts are being terminated;

(2) to notify the consumer that the debt collector or creditor may invoke specified remedies which are ordinarily invoked by such debt collector or creditor; or

(3) where applicable, to notify the consumer that the debt collector or creditor intends to invoke a specified remedy.

If such notice from the consumer is made by mail, notification shall be complete upon receipt.

(d) For the purpose of this section, the term "consumer" includes the consumer's spouse, parent (if the consumer is a minor), guardian, executor, or administrator.

## § 806. Harassment or abuse

<div align="right">15 USC 1692d</div>

A debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection of a debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

(1) The use or threat of use of violence or other criminal means to harm the physical person, reputation, or property of any person.

(2) The use of obscene or profane language or language the natural consequence of which is to abuse the hearer or reader.

(3) The publication of a list of consumers who allegedly refuse to pay debts, except to a consumer reporting agency or to persons meeting the requirements of section 603(f) or 604(3)[1] of this Act.

(4) The advertisement for sale of any debt to coerce payment of the debt.

(5) Causing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number.

(6) Except as provided in section 804, the placement of telephone calls without meaningful disclosure of the caller's identity.

---

1. Section 604(3) has been renumbered as Section 604(a)(3).

§ 805                                                    15 USC 1692c

15 USC 1692e

## § 807. False or misleading representations

A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

(1) The false representation or implication that the debt collector is vouched for, bonded by, or affiliated with the United States or any State, including the use of any badge, uniform, or facsimile thereof.

(2) The false representation of—

(A) the character, amount, or legal status of any debt; or

(B) any services rendered or compensation which may be lawfully received by any debt collector for the collection of a debt.

(3) The false representation or implication that any individual is an attorney or that any communication is from an attorney.

(4) The representation or implication that nonpayment of any debt will result in the arrest or imprisonment of any person or the seizure, garnishment, attachment, or sale of any property or wages of any person unless such action is lawful and the debt collector or creditor intends to take such action.

(5) The threat to take any action that cannot legally be taken or that is not intended to be taken.

(6) The false representation or implication that a sale, referral, or other transfer of any interest in a debt shall cause the consumer to—

(A) lose any claim or defense to payment of the debt; or

(B) become subject to any practice prohibited by this title.

(7) The false representation or implication that the consumer committed any crime or other conduct in order to disgrace the consumer.

(8) Communicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed.

(9) The use or distribution of any written communication which simulates or is falsely represented to be a document authorized, issued, or approved by any court, official, or agency of the United States or any State, or which creates a false impression as to its source, authorization, or approval.

(10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

(11) The failure to disclose in the initial written communication with the consumer and, in addition, if the initial communication with the consumer is oral, in that initial oral communication, that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose, and the failure to disclose in subsequent communications that the communication is from a debt collector, except that this paragraph shall not apply to a formal pleading made in connection with a legal action.

(12) The false representation or implication that accounts have been turned over to innocent purchasers for value.

(13) The false representation or implication that documents are legal process.

(14) The use of any business, company, or organization name other than the true name of the debt collector's business, company, or organization.

(15) The false representation or implication that documents are not legal process forms or do not require action by the consumer.

(16) The false representation or implication that a debt collector operates or is employed by a consumer reporting agency as defined by section 603(f) of this Act.

15 USC 1692f

## § 808. Unfair practices

A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

(1) The collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law.

(2) The acceptance by a debt collector from any person of a check or other payment instrument postdated by more than five days unless such person is notified in writing of the debt collector's intent to deposit such check or instrument not more than ten nor less than three business days prior to such deposit.

(3) The solicitation by a debt collector of any postdated check or other postdated payment instrument for the purpose of threatening or instituting criminal prosecution.

(4) Depositing or threatening to deposit any postdated check or other postdated payment instrument prior to the date on such check or instrument.

(5) Causing charges to be made to any person for communications by concealment of the true propose of the communication. Such charges include, but are not limited to, collect telephone calls and telegram fees.

(6) Taking or threatening to take any nonjudicial action to effect dispossession or disablement of property if—

(A) there is no present right to possession of the property claimed as collateral through an enforceable security interest;

(B) there is no present intention to take possession of the property; or

(C) the property is exempt by law from such dispossession or disablement.

(7) Communicating with a consumer regarding a debt by post card.

(8) Using any language or symbol, other than the debt collector's address, on any envelope when communicating with a consumer by use of the mails or by telegram, except that a debt collector may use his business name if such name does not indicate that he is in the debt collection business.

### § 809. Validation of debts

<div style="float:right">15 USC 1692g</div>

(a) Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing—

(1) the amount of the debt;

(2) the name of the creditor to whom the debt is owed;

(3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;

(4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and

(5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

(b) If the consumer notifies the debt collector in writing within the thirty-day period described in subsection (a) that the debt, or any portion thereof, is disputed, or that the consumer requests the name and address of the original credi-

§ 808                                          15 USC 1692f

tor, the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt or any copy of a judgment, or the name and address of the original creditor, and a copy of such verification or judgment, or name and address of the original creditor, is mailed to the consumer by the debt collector. Collection activities and communications that do not otherwise violate this title may continue during the 30-day period referred to in subsection (a) unless the consumer has notified the debt collector in writing that the debt, or any portion of the debt, is disputed or that the consumer requests the name and address of the original creditor. Any collection activities and communication during the 30-day period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor.

(c) The failure of a consumer to dispute the validity of a debt under this section may not be construed by any court as an admission of liability by the consumer.

(d) A communication in the form of a formal pleading in a civil action shall not be treated as an initial communication for purposes of subsection (a).

(e) The sending or delivery of any form or notice which does not relate to the collection of a debt and is expressly required by the Internal Revenue Code of 1986, title V of Gramm-Leach-Bliley Act, or any provision of Federal or State law relating to notice of data security breach or privacy, or any regulation prescribed under any such provision of law, shall not be treated as an initial communication in connection with debt collection for purposes of this section.

## § 810. Multiple debts

15 USC 1692h

If any consumer owes multiple debts and makes any single payment to any debt collector with respect to such debts, such debt collector may not apply such payment to any debt which is disputed by the consumer and, where applicable, shall apply such payment in accordance with the consumer's directions.

### § 811. Legal actions by debt collectors

15 USC 1692i

(a) Any debt collector who brings any legal action on a debt against any consumer shall—

 (1) in the case of an action to enforce an interest in real property securing the consumer's obligation, bring such action only in a judicial district or similar legal entity in which such real property is located; or

 (2) in the case of an action not described in paragraph (1), bring such action only in the judicial district or similar legal entity—

  (A) in which such consumer signed the contract sued upon; or

  (B) in which such consumer resides at the commencement of the action.

(b) Nothing in this title shall be construed to authorize the bringing of legal actions by debt collectors.

### § 812. Furnishing certain deceptive forms

15 USC 1692j

(a) It is unlawful to design, compile, and furnish any form knowing that such form would be used to create the false belief in a consumer that a person other than the creditor of such consumer is participating in the collection of or in an attempt to collect a debt such consumer allegedly owes such creditor, when in fact such person is not so participating.

(b) Any person who violates this section shall be liable to the same extent and in the same manner as a debt collector is liable under section 813 for failure to comply with a provision of this title.

### § 813. Civil liability

15 USC 1692k

(a) Except as otherwise provided by this section, any debt collector who fails to comply with any provision of this title with respect to any person is liable to such person in an amount equal to the sum of—

(1)  any actual damage sustained by such person as a result of such failure;

(2)  (A) in the case of any action by an individual, such additional damages as the court may allow, but not exceeding $1,000; or

(B) in the case of a class action,

    (i)  such amount for each named plaintiff as could be recovered under subparagraph (A), and

    (ii)  such amount as the court may allow for all other class members, without regard to a minimum individual recovery, not to exceed the lesser of $500,000 or 1 per centum of the net worth of the debt collector; and

(3)  in the case of any successful action to enforce the foregoing liability, the costs of the action, together with a reasonable attorney's fee as determined by the court. On a finding by the court that an action under this section was brought in bad faith and for the purpose of harassment, the court may award to the defendant attorney's fees reasonable in relation to the work expended and costs.

(b) In determining the amount of liability in any action under subsection (a), the court shall consider, among other relevant factors—

(1)  in any individual action under subsection (a)(2)(A), the frequency and persistence of noncompliance by the debt collector, the nature of such noncompliance, and the extent to which such noncompliance was intentional; or

(2)  in any class action under subsection (a)(2)(B), the frequency and persistence of noncompliance by the debt collector, the nature of such noncompliance, the resources of the debt collector, the number of persons adversely affected, and the extent to which the debt collector's noncompliance was intentional.

(c) A debt collector may not be held liable in any action brought under this title if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error.

(d) An action to enforce any liability created by this title may be brought in any appropriate United States district court without regard to the amount in controversy, or in any other court of competent jurisdiction, within one year from the date on which the violation occurs.

(e) No provision of this section imposing any liability shall apply to any act done or omitted in good faith in conformity with any advisory opinion of the Commission, notwithstanding that after such act or omission has occurred, such opinion is amended, rescinded, or determined by judicial or other authority to be invalid for any reason.

## § 814. Administrative enforcement

15 USC 1692l

(a) Compliance with this title shall be enforced by the Commission, except to the extent that enforcement of the requirements imposed under this title is specifically committed to another agency under subsection (b). For purpose of the exercise by the Commission of its functions and powers under the Federal Trade Commission Act, a violation of this title shall be deemed an unfair or deceptive act or practice in violation of that Act. All of the functions and powers of the Commission under the Federal Trade Commission Act are available to the Commission to enforce compliance by any person with this title, irrespective of whether that person is engaged in commerce or meets any other jurisdictional tests in the Federal Trade Commission Act, including the power to enforce the provisions of this title in the same manner as if the violation had been a violation of a Federal Trade Commission trade regulation rule.

(b) Compliance with any requirements imposed under this title shall be enforced under—

(1) section 8 of the Federal Deposit Insurance Act, in the case of—

> (A) national banks, and Federal branches and Federal agencies of foreign banks, by the Office of the Comptroller of the Currency;

> (B) member banks of the Federal Reserve System (other than national banks), branches and agencies of foreign banks (other than Federal branches, Federal agencies, and insured State branches of foreign banks), commercial lending companies owned or controlled by foreign banks, and organizations operating under section 25 or 25(a) of the Federal Reserve Act, by the Board of Governors of the Federal Reserve System; and

> (C) banks insured by the Federal Deposit Insurance Corporation (other than members of the Federal Reserve System) and insured State branches of foreign banks, by the Board of Directors of the Federal Deposit Insurance Corporation;

(2) section 8 of the Federal Deposit Insurance Act, by the Director of the Office of Thrift Supervision, in the case of a savings association the deposits of which are insured by the Federal Deposit Insurance Corporation;

(3) the Federal Credit Union Act, by the Administrator of the National Credit Union Administration with respect to any Federal credit union;

(4) the Acts to regulate commerce, by the Secretary of Transportation, with respect to all carriers subject to the jurisdiction of the Surface Transportation Board;

(5) the Federal Aviation Act of 1958, by the Secretary of Transportation with respect to any air carrier or any foreign air carrier subject to that Act; and

(6) the Packers and Stockyards Act, 1921 (except as provided in section 406 of that Act), by the Secretary of Agriculture with respect to any activities subject to that Act.

§ 814                                                                15 USC 1692/

The terms used in paragraph (1) that are not defined in this title or otherwise defined in section 3(s) of the Federal Deposit Insurance Act (12 U.S.C. 1813(s)) shall have the meaning given to them in section 1(b) of the International Banking Act of 1978 (12 U.S.C. 3101).

(c) For the purpose of the exercise by any agency referred to in subsection (b) of its powers under any Act referred to in that subsection, a violation of any requirement imposed under this title shall be deemed to be a violation of a requirement imposed under that Act. In addition to its powers under any provision of law specifically referred to in subsection (b), each of the agencies referred to in that subsection may exercise, for the purpose of enforcing compliance with any requirement imposed under this title any other authority conferred on it by law, except as provided in subsection (d).

(d) Neither the Commission nor any other agency referred to in subsection (b) may promulgate trade regulation rules or other regulations with respect to the collection of debts by debt collectors as defined in this title.

### § 815. Reports to Congress by the Commission

15 USC 1692m

(a) Not later than one year after the effective date of this title and at one-year intervals thereafter, the Commission shall make reports to the Congress concerning the administration of its functions under this title, including such recommendations as the Commission deems necessary or appropriate. In addition, each report of the Commission shall include its assessment of the extent to which compliance with this title is being achieved and a summary of the enforcement actions taken by the Commission under section 814 of this title.

(b) In the exercise of its functions under this title, the Commission may obtain upon request the views of any other Federal agency which exercises enforcement functions under section 814 of this title.

§ 814

15 USC 1692l

15 USC 1692n

## § 816. Relation to State laws

This title does not annul, alter, or affect, or exempt any person subject to the provisions of this title from complying with the laws of any State with respect to debt collection practices, except to the extent that those laws are inconsistent with any provision of this title, and then only to the extent of the inconsistency. For purposes of this section, a State law is not inconsistent with this title if the protection such law affords any consumer is greater than the protection provided by this title.

15 USC 1692o

## § 817. Exemption for State regulation

The Commission shall by regulation exempt from the requirements of this title any class of debt collection practices within any State if the Commission determines that under the law of that State that class of debt collection practices is subject to requirements substantially similar to those imposed by this title, and that there is adequate provision for enforcement.

15 USC 1692p

## § 818. Exception for certain bad check enforcement programs operated by private entities

(a) In General.—

(1)  TREATMENT OF CERTAIN PRIVATE ENTITIES.— Subject to paragraph (2), a private entity shall be excluded from the definition of a debt collector, pursuant to the exception provided in section 803(6), with respect to the operation by the entity of a program described in paragraph (2)(A) under a contract described in paragraph (2)(B).

(2)  CONDITIONS OF APPLICABILITY.—Paragraph (1) shall apply if—

(A) a State or district attorney establishes, within the jurisdiction of such State or district attorney and with respect to alleged bad check violations that do not involve a check described in subsection (b), a pretrial diversion program for alleged bad check offenders who agree to participate voluntarily in such program to avoid criminal prosecution;

(B) a private entity, that is subject to an administrative support services contract with a State or district attorney and operates under the direction, supervision, and control of such State or district attorney, operates the pretrial diversion program described in subparagraph (A); and

(C) in the course of performing duties delegated to it by a State or district attorney under the contract, the private entity referred to in subparagraph (B)—

   (i)   complies with the penal laws of the State;

   (ii)  conforms with the terms of the contract and directives of the State or district attorney;

   (iii) does not exercise independent prosecutorial discretion;

   (iv) contacts any alleged offender referred to in subparagraph (A) for purposes of participating in a program referred to in such paragraph—

      (I)   only as a result of any determination by the State or district attorney that probable cause of a bad check violation under State penal law exists, and that contact with the alleged offender for purposes of participation in the program is appropriate; and

      (II)  the alleged offender has failed to pay the bad check after demand for payment, pursuant to State law, is made for payment of the check amount;

   (v)  includes as part of an initial written communication with an alleged offender a clear and conspicuous statement that—

      (I)   the alleged offender may dispute the validity of any alleged bad check violation;

      (II)  where the alleged offender knows, or has reasonable cause to believe, that the alleged bad check violation is the result of theft or forgery of the check, identity theft,

§ 818                                                          15 USC 1692p

or other fraud that is not the result of the conduct of the alleged offender, the alleged offender may file a crime report with the appropriate law enforcement agency; and

(III) if the alleged offender notifies the private entity or the district attorney in writing, not later than 30 days after being contacted for the first time pursuant to clause (iv), that there is a dispute pursuant to this subsection, before further restitution efforts are pursued, the district attorney or an employee of the district attorney authorized to make such a determination makes a determination that there is probable cause to believe that a crime has been committed; and

(vi) charges only fees in connection with services under the contract that have been authorized by the contract with the State or district attorney.

(b) Certain Checks Excluded.—A check is described in this subsection if the check involves, or is subsequently found to involve—

(1) a postdated check presented in connection with a payday loan, or other similar transaction, where the payee of the check knew that the issuer had insufficient funds at the time the check was made, drawn, or delivered;

(2) a stop payment order where the issuer acted in good faith and with reasonable cause in stopping payment on the check;

(3) a check dishonored because of an adjustment to the issuer's account by the financial institution holding such account without providing notice to the person at the time the check was made, drawn, or delivered;

(4) a check for partial payment of a debt where the payee had previously accepted partial payment for such debt;

(5) a check issued by a person who was not competent, or was not of legal age, to enter into a legal contractual obligation at the time the check was made, drawn, or delivered; or

(6) a check issued to pay an obligation arising from a transaction that was illegal in the jurisdiction of the State or district attorney at the time the check was made, drawn, or delivered.

(c) Definitions.—For purposes of this section, the following definitions shall apply:

(1) STATE OR DISTRICT ATTORNEY.—The term "State or district attorney" means the chief elected or appointed prosecuting attorney in a district, county (as defined in section 2 of title 1, United States Code), municipality, or comparable jurisdiction, including State attorneys general who act as chief elected or appointed prosecuting attorneys in a district, county (as so defined), municipality or comparable jurisdiction, who may be referred to by a variety of titles such as district attorneys, prosecuting attorneys, commonwealth's attorneys, solicitors, county attorneys, and state's attorneys, and who are responsible for the prosecution of State crimes and violations of jurisdiction-specific local ordinances.

(2) CHECK.—The term "check" has the same meaning as in section 3(6) of the Check Clearing for the 21st Century Act.

(3) BAD CHECK VIOLATION.—The term "bad check violation" means a violation of the applicable State criminal law relating to the writing of dishonored checks.

**§ 819. Effective date**    15 USC 1692 note

This title takes effect upon the expiration of six months after the date of its enactment, but section 809 shall apply only with respect to debts for which the initial attempt to collect occurs after such effective date.

## LEGISLATIVE HISTORY

House Report:  No. 95-131 (Comm. on Banking, Finance, and Urban Affairs)

Senate Report:  No. 95-382 (Comm. on Banking, Housing and Urban Affairs)

Congressional Record, Vol. 123 (1977)

        April 4, House considered and passed H.R. 5294.

        Aug. 5, Senate considered and passed amended version of
H.R. 5294.

        Sept. 8, House considered and passed Senate version.

Enactment:  Public Law 95-109 (Sept. 20, 1977)

Amendments:  Public Law Nos.

        99-361 (July 9, 1986)

        101-73 (Aug. 9, 1989)

        102-242 (Dec. 19, 1991)

        102-550 (Oct. 28, 1992)

        104-88 (Dec. 29, 1995)

        104-208 (Sept. 30, 1996)

        109-351 (Oct. 13, 2006)

Revised January 2009

# SPECIAL POWER OF ATTORNEY

**NOTICE:** THE POWERS GRANTED BY THIS DOCUMENT ARE BROAD AND SWEEPING. IF YOU HAVE ANY QUESTIONS ABOUT THESE POWERS, OBTAIN COMPETENT LEGAL ADVICE. THIS DOCUMENT DOES NOT AUTHORIZE ANYONE TO MAKE MEDICAL AND OTHER HEALTH-CARE DECISIONS FOR YOU. YOU MAY REVOKE THIS POWER OF ATTORNEY IF YOU LATER WISH TO DO SO.

I, James Shannon, 21329 Alvar Place, Carson, CA [90745], hereby appoint, as my Attorney in fact, Alvin Pates, 1611 S. Melrose Drive, #A336, Vista, CA [92081].

Attorney-in-Fact ("Agent").

I hereby revoke any and all Special powers of attorney that previously have been signed by me. Regarding the entities named below. However, the preceding sentence shall not have the effect of revoking any powers of attorney that are directly related to my health care that previously have been signed by me.

My Agent shall have full power and authority to act on my behalf specifically **AMERICA'S SERVICING COMPANY; GMAC MORTGAGE FIRST AMERICAN LOANSTAR TRUSTEE SERVICES; AND DOES 1-10; et al**. This power and authority shall authorize my Agent to manage and conduct all of my affairs and to exercise all of my legal rights and powers, including all rights and powers that I may acquire in the future. My Agent's powers shall include, but not be limited to, the power to:

1.  Take any and all legal steps necessary to collect any amount or debt owed to me, or to settle any claim, whether made against me or asserted on my behalf against any other person or entity regarding real property at **11147 EVERS AVE., LOS ANGELES, CA [90063], with APN# 6070-010-019**

2.  Enter into binding contracts on my behalf, in regards to **AMERICA'S SERVICING COMPANY; GMAC MORTGAGE FIRST AMERICAN LOANSTAR TRUSTEE SERVICES; AND DOES 1-10; et al**. and or any and all of its entities subsidiaries or parties or secured-parties, that contain a legal nexus to the businesses known as **AMERICA'S SERVICING COMPANY; GMAC MORTGAGE FIRST AMERICAN LOANSTAR TRUSTEE SERVICES; AND DOES 1-10; et al**.

3.  Employ professional and business assistance as may be appropriate, including attorneys, accountants, and security investigation services.

4.  Prepare, sign, and file documents with any governmental body or agency, including, but not limited to, authorization to:

    a.  Prepare, sign and file complaint(s) with federal, state, and local court(s), as well as other governmental bodies.

This Power of Attorney shall be construed as a Special Power of Attorney. The listing of specific powers is intended to limit and restrict the powers granted in this Special Power of Attorney.

Any power or authority granted to my Agent under this document shall be limited to the extent necessary to prevent this Power of Attorney from causing: (i) my income to be taxable to my Agent, (ii) my assets to be subject to a general power of appointment by my Agent, and (iii) my Agent to have any incidents of ownership with respect to any life insurance policies that I may own on the life of my Agent.

My Agent shall not be liable for any loss that results from a judgment error that was made in good faith. However, my Agent shall be liable for willful misconduct or the failure to act in good faith while acting under the authority of this Special Power of Attorney.

I authorize my Agent to indemnify and hold harmless any third party who accepts and acts under this document.

My Agent shall be entitled to reasonable compensation for any services provided as my Agent. My Agent shall be entitled to reimbursement of all reasonable expenses incurred in connection with this Special Power of Attorney.

My Agent shall provide an accounting for all funds handled and all acts performed as my Agent, if I so request or if such a request is made by any authorized personal representative or fiduciary acting on my behalf.

This Special Power of Attorney shall become effective immediately and shall not be affected by my disability or lack of mental competence, except as may be provided otherwise by an applicable state statute. This is a Durable Power of Attorney. This Special Power of Attorney shall remain in force effective for three years from the date of its signing or until this issue is resolved which ever occurs first.

Dated: 05/15/09 in city of Carson, county of Los Angeles, Republic of California.

James Shannon



NORMA Q. NICHO
Commission # 1637536
Notary Public - California
Los Angeles County
My Comm. Expires Feb 10, 2010

**NOTARIAL ACKNOWLEDGEMENT SEAL ON THE NEXT PAGE**

# **ACKNOWLEDGEMENT**

STATE OF CALIFORNIA            )
COUNTY OF LOS ANGELES          )

On **_May 18th, 2009_** before me, **_Norma Q. Nicho_**, Notary Public, personally appeared, **_James Kelvin Shannon_**, who proved to me on the basis of satisfactory and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that my his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

Witness my hand and official seal.

Signature: _____
Notary Public

NORMA Q. NICHO
Commission # 1637536
Notary Public - California
Los Angeles County
My Comm. Expires Feb 10, 2010

(seal)

# BRIEF IN SUPPORT OF NOTICE & DEMAND TO RIGHT OF COUNSEL

The Sixth Amendment to the U.S. Constitution states:

In all criminal prosecutions, the accused shall enjoy the right ...to have the assistance of Counsel for his/her defense. Plaintiff/Defendant asks the Court to take Judicial Notice of the fact that many of the men who contributed to the writing or ratifying of the Constitution were attorneys, such as John Jay, first Chief Justice of the U.S. Supreme Court, and John Marshall, a later Chief Justice. John Adams, James Wilson, John Blaire, and Oliver Ellsworth were among the many fine attorneys who assisted in approving the language used in the Constitution for the united States of America (hereinafter "U.S. Constitution"). Are we to believe that the word "COUNSEL" was selected by these "attorneys" with no thought whatsoever to its Common Law meaning of that time? In discussing a defendant's right to counsel, the U.S. Supreme Court has held:

... [H]is right to be heard through his own counsel is UNQUALIFIED. **_Chandler v. Fretag_**, 348 U.S. 3 (emphasis added)

In consulting Noah Webster's 1828 dictionary, the word "unqualified" is defined as:

Not modified, limited, or restricted by conditions or exceptions;....(Noah Webster's First Edition of an American Dictionary of the English Language, 1828, republished in facsimile edition by Foundation for American Christian Education, San Francisco, California, second edition, 1980). It is undeniable that the explicit use of the word "counsel" in the Sixth Amendment was intended to mean someone other than an attorney, as well as an attorney.

This view is upheld by a U.S. District Court when it recognized an accountant as counsel, and reprimanded an IRS employee:

Yet while he was informing the prospective defendant of his Right to Counsel, he was simultaneously requesting that the Plaintiff/Defendant's Counsel leave the interrogation. In effect, the investigator informed

Tarlowski that he might have his attorney present, but not his accountant. Ruling in favor of Tarlowski's motion to suppress, the Court said:

For a government official to mouth in a ritualistic way part of the warning about the right to counsel, while excluding the person relied upon as counsel is, in effect, to reverse the meaning of the words used. *U.S. v. Tarlowski*, 305 F.Supp. 112 (1969)

Plaintiff/Defendant also asks the Court to take Judicial Notice of the use of the word "COUNSEL" in the 17th century:

> ... and in all courts persons of all persuaisions [sic] may freely appear in their own way, and according to their own manner and there plead their own causes themselves, or if unable, by their friends .... **Fundamental Constitution for the Province of East Jersey** (1683) [emphasis added].
>
> To have a "friend" act as Counsel was a Common Law Right and was recognized as such in the Bill of Rights when the term "counsel" was used instead of the term "attorney".

The language of the Constitution cannot be interpreted safely, except by reference to common law and to British institutions as they were when the instrument was framed and adopted. The statesmen and lawyers of the convention who submitted it to the ratification of conventions of the thirteen states, were born and brought up in the atmosphere of the common law and thought and spoke in its vocabulary... when they came to put their conclusions into the form of fundamental law in a compact, they expressed them in terms of common law, confident that they could be shortly and easily understood. Ex parte Grossman, 267 U.S. 87, 108 (1925) [emphasis added] No limit or qualification was ever intended to be put upon the Right to "assistance of counsel" in the Sixth Amendment and Defendant submits the word "counsel" was used in recognition of the Common Law Right to have one's "friends" speak for a Defendant, if she so chose. Reference to the Common Law is mandatory in a proper interpretation of the Constitution, but most particularly in the Bill of Rights. There is a preponderance of U.S. Supreme Court cases which uphold the position of Defendant on interpretation of the Constitution.... as men whose intentions require no concealment, generally employ the words which most directly and aptly express the ideas they intend to convey: the enlightened patriots who framed our constitution and the people who adopted it must be understood to have employed the words in their natural sense, and to have intended what they

have said. ***Gibbons v. Ogden***, 22 U.S. 1 (1824). And;... In the construction of the constitution, we must look to the history of the times, and examine the state of things existing when it was framed and adopted. 12 Wheat 354; 6 Wheat 416; 4 Peters 431-2; to ascertain the old law, the mischief and the remedy. ***State of Rhode Island v. The State of Massachusetts***, 37 U.S. 657 (1938). And also, in speaking further of Constitutional provisions, we find: We agree, it is not to be frittered away by doubtful construction, but like every clause in every constitution it must have reasonable interpretation, and be held to express the intention of the framers. ***Woodson v. Murdock***, 89 U.S. 351, 369 (1874)

And further, the necessities which gave birth to the Constitution, the controversies which precede its formation and the conflicts of opinion which were settled by its adoption, may properly be taken into view for the purposes of tracing to its source, any particular provision of the Constitution, in order thereby, to be enabled to correctly interpret its meaning. ***Pollock v. Farmers' Loan & Trust Co.***, 157 U.S. 429, 558. History shows conclusively that it was a Common Law Right to be represented in court by a "friend" rather than an attorney, if one chose. Plaintiff/Defendant claims that right herein, which the Sixth Amendment did indeed secure, and is not subject to any "revision" by the American Bar Association. "Undoubtedly what went before the adoption of the Constitution may be resorted to for the purpose of throwing light on its provisions." ***Marshall v. Gordon***, 243 U.S. 521, 533 (1971) Each word has a particular meaning and was deliberately chosen. The word "Counsel" was not idly set down as the law of this land, but, on the contrary, was selected with great skill and meaning. To disregard such a deliberate choice of words and their natural meaning, would be a departure from the first principle of Constitutional interpretation. "In expounding the Constitution of the United States," said Chief Justice Taney in ***Holmes v. Jennison***, 14 540, 570, 571, "every word must have its due force and appropriate meaning; for it is evident from the whole instrument, that, no word was unnecessarily used, or needlessly added." The many discussions which have taken place upon the construction of the Constitution, have proved the correctness of this proposition; and shown the high talent, the caution and the foresight of the illustrious men who framed it. Every word appears to have been weighed with the utmost deliberation and its force and effect to have been fully understood. ***Wright v. U.S.***, 302 U.S. 583 (1938) [emphasis added] Little did the framers of our Constitution, who labored so long and hard to fashion it, realize that the day might come when it would be ridiculed by law professors, snickered at by law clerks, and consigned to the

wastebasket by attorneys, the bar, and the Judiciary. To narrowly interpret the word "Counsel" to mean only " attorneys" is an infringement of Plaintiff/Defendant's Sixth Amendment right to counsel, which even the U.S. Supreme Court has held is "unqualified." See **Chandler supra.** The words of the Amendment are simple, clear, and not ambiguous and Were obviously written by our forefathers to be understood by The People, as the following citation undeniably indicates: The Constitution was written to be understood by the voters; its words and phrases were used in their normal and ordinary, as distinguished from technical meaning; where the intention is clear, there is no room for construction, and no excuse for interpolation or addition. ***Martin v. Hunter's Lessee***, 1 Wheat 304; ***Gibbons v. Ogden***, 9 Wheat 1; ***Brown v. Maryland,*** 12 Wheat 419; ***Craig v. Missouri***, 4 Pet. 10; ***Tennessee v.Whitworth,*** 117 U.S. 139; ***Lake County v. Rollins***, 130 U.S. 662; ***Hodges v. United States***, 203 U.S. 1; ***Edwards v. Cuba R. Co***., 268 U.S. 628; ***The Pocket Veto Case***, 279 U.S. 655(justice) Story on the Constitution, 5th ed., sec. 451; Cooley's Constitutional Limitations, 2nd ed., P. 61, 70. And further, It cannot be presumed that any clause in the Constitution is intended to be without effect;....***Marbury v. Madison***, 5 U.S. 137, 174 (1803) In passing, it might be noted that Chief Justice John Marshall, who Principally was responsible for the holding in the above cited Marbury case, and who seems to be looked upon by most attorneys and judges as the greatest of our Supreme Court justices, is reported to have had two weeks law school preparation, at which time half his study was philosophy. Also: The Constitution is a written instrument. As such, its meaning does not alter. That which it meant when it was adopted, it means now. ***South Carolina v. United States***, 199 U.S. 437, 448 (1905). Defendant is deeply perturbed at the erosion of his Constitutional Right to Counsel by the very legal profession itself. The restriction of the Courts to professional attorneys only, is the result of attorneys who sat in our legislatures and voted upon laws which involved, for them, a conflict of interest and which were, and are, upheld by their brother attorneys, who sit on the benches of our Courts, ruling in violation of the Sovereign will of The People, which it is their sworn duty to obey. Any State law which prohibits laymen from speaking on behalf of another, when sought for that purpose, is a violation of the Sixth and Fourteenth Amendment. Any implementation of such State laws also violates Plaintiff/Defendant's rights to freedom of speech, wherein he/she may speak through whom he/she chooses; to freedom of association wherein he/she may associate with whom she pleases; to due process of law, wherein she is denied Counsel of his choice and therefore as a consequence, he/she is denied a fair trial, and he/she is also denied an impartial jury by

being unable to speak, as he/she knows he/she should, through Counsel of trust to the jury. To be denied a layman to assist him/her with advice and to act as a spokesman at Plaintiff/Defendant's request, is to subject Plaintiff/Defendant to unequal treatment under the law. Defendant, as an unconvicted citizen, has less Rights and inferior treatment than prisoners in State and Federal prisons, who are permitted "jailhouse" lawyers, laymen who practice law on behalf of their fellow prisoners, and with the approval of many Courts. Plaintiff/Defendant, an unconvicted Citizen, is denied the right to contract when he/she is forbidden the assistance of one who is willing to speak for him/her on Plaintiff/ Defendant's request. The denial of Plaintiff/Defendant's right to contract, it is respectfully submitted, is because attorneys, who are, in this State, members of a bar association, for which they have promoted a monopoly through their controlled legislature, have purported to make a "law" for the protection of a "public," whereas, they have actually instigated a self- serving franchise in great part, at the expense of the public, and, in Plaintiff/Defendant's view, to the detriment of Constitutional government. Again, Plaintiff/Defendant is denied a "fair trial" and an impartial jury when a so-called "law" prohibits him/her from contracting with one of his/her choice for Defendant's legal defense against a hostile government bent on punishing Defendant for the exercise of the very Constitutional Rights the government should be upholding rather than attacking. The aforementioned rights are infringed, abridged, and denied when the Word "counsel" is qualified to mean only attorneys may speak for the defense in a Court of Law. This was not the case in Tarlowski, where the "Counsel" referred to by the Court was an accountant. It appears to Defendant that a careful consideration of the words of the Sixth Amendment, securing his right to Counsel of CHOICE must be undertaken here. Since no words were idly selected by the forefathers, let us emphasize them here and now so that there can be no misunderstanding as to their meaning, for Defendant believes their stand in this matter is constitutionally correct. The vital words here are: In all criminal prosecutions, the accused SHALL ENJOY the RIGHT ... to have the ASSISTANCE OF COUNSEL for his/her defense. Defendant requests the Court's indulgence and patience for a brief analysis of the words capitalized above, as where his Life, Liberty, or Property is involved, it is not a matter which he takes lightly. For the source of the common meaning of common words in use when the Constitution was written, we refer to Noah Webster's First Edition of An American Dictionary of the English Language, 1828, republished in facsimile edition by the Foundation for American Christian Education, San Francisco, California, Second Edition, 1980.

**ALL**: a. Everyone...the whole quantity, extent, duration, amount, quality, or degree; ... This word signifies the whole or entire thing. It is obvious on its face that the word "all" allows for no exceptions and is all-inclusive and it is also obvious that the Sixth Amendment, therefore, allows for no criminal trial where it does not apply.

**SHALL**: v.i. In the present tense, shall ... forms the future tense... informs another that a fact is to take place .... In the second and third persons, shall implies a promise, command or determination. "You shall receive ...." The word "shall," in legal contemplation, is mandatory; it is a word "of command ... must be given a compulsory meaning." It is clearly so stated on page 1233 of Black's Law Dictionary, Fifth Edition, 1979.

**ENJOY**: v.t ... To feel or perceive with pleasure; to take pleasure or satisfaction in the possession or experience of....We enjoy a free constitution and inestimable privileges. Plaintiff/Defendant has now informed the Court that he/she has little confidence in the legal profession. He/she is defending themselves out of necessity, not out of desire. Plaintiff/Defendant is aware of a few attorneys whom he/she trusts, but their multi-thousand dollar fees are out of the question for this Plaintiff/Defendant. He/she does not trust just any attorney out of a grab-bag whom the government is willing to furnish; neither would this Plaintiff/defendant be satisfied with such an "attorney's" concept of the U.S. Constitution. The average attorney, full of law-school brainwashing, thinks that the Constitution is what the judges say it is, rather than what the Constitution itself says it is. If Plaintiff/Defendant cannot "enjoy" the "assistance of counsel" from the Bar (i.e. the legal establishment), then he/she has the undeniable right of Counsel which he/she can enjoy. To deny this right is to deny his/her rights under the Sixth Amendment to Counsel. It is the use of the word **"ENJOY,"** as well as **"COUNSEL,"** which gives a Plaintiff/Defendant the right to the counsel of his/her choice, bar or no bar, as was provided for by the Founding Fathers, and in which the Ninth Amendment clearly prohibits any denial or disparagement thereof: The enumeration in the Constitution of certain rights shall not be construed to deny or disparage others retained by the people. What honest attorney or judge can fail to see that in the denial of Counsel of choice to a Defendant in court, that he is not "denying" or "disparaging" both enumerated and non-enumerated rights? And what honest attorney or judge can fail to see that in enforcing a so-called statute denying a layman the opportunity to speak in defense of a friend at the friend's request, that said

lawyer or judge is rendering infidelity to his oath of office to support the Constitution which states, in **Article VI, Clause 2**: This Constitution, and the Laws of the United States which shall be made in Pursuance thereof .... shall be the supreme Law of the Land; and the judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding. [emphasis added] Attorneys are called "officers of the court," and they are required to Take oaths to support the Constitution. When the attorneys attempt to prevent the exercise of the rights of plaintiff/defendants in court to speak through lay friends of confidence, the attorneys and judges are involved in denying that which they swear to uphold -- to their eternal discredit and dishonor. The fact that the attorneys and judges have been successful for a long time, and that colleagues in judicial robes have upheld them, does not make it right; it does not make it Constitutional; and it certainly does not enhance the rights of the grass-roots American People who are tired of being subjected to the exorbitant legal fees of a closed-shop union which says, "If you exercise your constitutional rights, we will see to it that you go to jail," and now, "You have to go our route because the loss of your Constitutional rights is a settled matter." How could any decent person uphold such a system? How can the legal and the judicial profession escape tarnished "images?" Is the denial of Constitutional Rights to the Defendant "frivolous?" Is it not better to Restore Constitutional Rights than to have a restless people rise up? Must we have "government of attorneys, by attorneys, and for attorneys?" Especially, after Watergate, the People are not going to stand for it. It is important to note that the Sixth Amendment word "enjoy" follows the word "shall," and it would therefore be a command of the sovereign power that the ability to enjoy the right to counsel is mandatory. The words "shall ...enjoy" make this very clear. The judgment as to what Counsel the Defendant can "enjoy" is left entirely in his hands and nowhere in the Sixth Amendment is this prerogative given to the Courts, but remains the "Right" of the Defendant.

**RIGHT**: n. Conformity to the will of God, or to His law, the perfect standard of truth and justice ... Just claim; immunity; privilege. All men have the right to the secure enjoyment of life, personal safety, liberty, and property. We deem the right of trial by jury invaluable, particularly in the case of crimes. The "right" to "enjoy" Counsel is claimed by Defendant by law, nature, and tradition and may not be infringed or disparaged by any private association or its members or by its sympathizers employed in government. It is a right which the People retained for themselves and it is to be protected by their judiciary.

It is not a function of the People's Courts, to protect the vested interests of any private monopoly as against the rights of The Sovereign People. Non-attorneys have as much right to speak for a Defendant in our Courts as attorneys. Otherwise the Courts are run only for a "special interest" and are, in fact, protecting a monopoly in violation of the Sherman Anti-Trust Law. Such a monopoly acts in the restraint of interstate commerce and as a restraint of competition and trade, which would lower the cost of justice to The People. Attorneys could still ply their trade, but they would have to be competent and deserve more fully the business which they would acquire from those who voluntarily trusted them.

**ASSISTANCE:** on. Help; aid; furtherance; succor; a contribution of Support in bodily strength or other means. The common understanding of the word "assistance" is that it comes from one who acts in a secondary capacity. For example, assistance is given to a President by a Vice President who "assists" him. We find a definition of "assistant" which follows the word "assistance." The above mentioned dictionary defines an assistant as one who serves in a subordinate position as a helper. The common practice today of the Defendant "assisting" the defense attorney is one to which Defendant objects. It is an erosion of the original right in which this motion is aimed at reestablishing. Defendant may also promote assistant Counsel to co-Counsel wherein they share in the defense and maintain that such a decision is theirs, not the Court's. It is theirs by Common Law and may not be denied or infringed upon by either the Courts or the bar association. It is also their Constitutional Right.

**COUNSEL**: n. Advice; opinion or instruction ... Those who give counsel in law; any counselor or advocate, or any number of counselors, barristers, or sergeants; as the plaintiff's counsel, or the defendant's counsel.

**COUNSELOR**: Any person who gives advice; ....One who is consulted by a client in a law case; one who gives advice in relation to a question of law; one whose profession is to give advice in law and manage causes for clients. If the men who framed the Bill of Rights meant by **"COUNSEL"** a licensed attorney, they would have said "licensed attorney". Surely the Court cannot refuse to recognize this, and in the interest of fairness, let it grant Defendant's motion. Neither the President of the United States nor the Governors who head the executive branches of government are required to be attorneys in order to administer and enforce the laws. Federal judges are not required by the Constitution, or by valid statute, to be attorneys.

Congressmen, Senators, and other Legislators who pass legislation, statutes, and "laws" do not have to be attorneys. Magistrates do not have to be "attorneys." Does it not seem strange that a Defendant can represent himself in Court without being an "attorney?" Why then, the Defendant asks, must the Defendant's representative in Court be a licensed attorney? Why must the Defendant's representative need a title which the lawmaker, the enforcer, the federal law adjudicator, and the Defendant herself does not need? Speak, Oh Learned Ones! And please speak without attempting to turn white into "black," and black into "white," as the graduates of law schools seem so gifted at doing. And please speak without being in contempt of the Constitution of the United States.

## THE WILL OF THE SOVEREIGN POWER

The United States Constitution is the will of The People, clearly set down for their agents, elected and appointed, to follow. No law supersedes the U.S. Constitution and only those in "pursuance" of it may stand. Even treaties must be made "in Pursuance" of the Constitution. We the People ... do ordain and establish this Constitution for the United States of America. Preamble to the U.S. Constitution (1789) In establishing this government, the People said that:

This Constitution and the laws ... made in pursuance thereof...shall be the supreme Law of the Land .... Article VI, Sec. 2, U.S. Constitution.

And they also commanded that:
   ... [A]ll ... judicial Officers, both of the United States and of the several states, shall be bound by Oath or Affirmation, to support this Constitution; .... Article VI, Clause 3, U.S. Constitution. It is clearly the will of the bar associations, not of the People, to close the Courts to all but licensed attorneys. Use of the word "counsel" rather than "attorneys" denotes the will of the Sovereign Power, which cannot be lawfully overridden. In the United States, Sovereignty resides in the people, who act through the organs established by the Constitution. *Chisholm v.Georgia*, 2 Dall 419, 471; *Penhallow v. Doane's Administrators*, 3 Dal 54, 93; *McCullock v. Maryland*, 4 Wheat 316, 404, 405; *Yick Wo v. Hopkins*, 118 U.S. 356, 370;... [T]he Congress cannot invoke the sovereign power of the people to override their will as thus declared. *Perry v. United States*, 294 U.S. 330, 353 (1935). In the Sixth Amendment, the People declared their will as to the

rights of the Accused in all criminal prosecutions and the right of the Defendant to "enjoy" the "assistance of counsel" was purposely couched in the Common Law term, "Counsel," so as to include those friends upon whom Defendant may depend for advice and protection. In a speech by Judge Learned Hand at the Mayflower Hotel in Washington, D.C., on May 11, 1929, entitled, "Is There a Common Will?" in speaking of judges, he said:

He is not to substitute even his juster will for theirs; otherwise it would not be the "common will" which prevails, and to that extent, the people would not govern. Defendant has the right to be foolish as well as wise, and this liberty is hers to do with as she pleases. To deny her freedom of choice in this matter of Counsel is unduly to interfere with the defense, and constitutes a denial of the will of The People, from whom the Courts' authority is derived, and a substitution in lieu thereof is being used -- that of the "will of attorneys." Bills of rights are, in their origin, reservations of rights not surrendered to the prince. Hamilton, Federalist Papers, No. 84. The right to have a "friend" plead one's case, or to assist one in Court, is a Common Law right secured by the Sixth Amendment. History is clear that the first ten amendments to the Constitution were adopted to secure certain common law rights of the people against invasion by the Federal Government. ***Bell v. Hood***, 71 F. Supp., 813, 816 (1947) U.S.D.C., So. Dist. Calif. Our Founding Fathers spoke and wrote in the vernacular of the Common Law, and "Counsel" was the word they chose. The facts are conclusive on this point, and the record supports this contention. Interpretation of the word "Counsel" to mean "attorney only" is a departure from the safeguards of the Bill of Rights. The Bill of Rights was provided as a barrier, to protect the individual against arbitrary exactions of ... legislatures, (and) courts ... it is the primary distinction between democratic and totalitarian way. Re Stoller, Supreme Court of Florida, en banc, 36 So. 2nd 443, 445 (1948). A more recent confirmation of Constitutional rights of the Accused says: Where rights secured by the Constitution are involved, there can be no rule-making or legislation which would abrogate them. ***Miranda v. Arizona***, 384 U.S. 436 Even though the Miranda decision referred to the Fifth Amendment right In toto, the above stated principle is of general application, wherein the word "rights" is not qualified.

## DEFENDANT'S RIGHT TO FREEDOM OF ASSOCIATION

In Tarlowski supra, the Court said, in suppressing evidence at the request of Tarlowski's motion: When a federal official's interference with the right of free association takes the form of limiting the ability of a criminal suspect to consult with and be accompanied by a person upon whom he relies for advice and protection, he gravely transgresses. For these reasons, the Motion to suppress must be granted. It was in this case that Tarlowski was denied the counsel of an accountant, not of a lawyer. Defendant has a right under the First Amendment freely to associate with whom she pleases in her defense and in its preparation and presentation, so long as such is respectful, with decorum, and without contempt for orderly rules of procedure which do not deprive one of Rights guaranteed by the U.S. Constitution. To deny this Right is also to deny his Fifth Amendment Right to Due Process of Law, which is actually a guarantee of fundamental fairness.

## DEFENDANT'S RIGHT TO PETITION FOR REDRESS GRIEVANCES

The First Amendment states, in pertinent part: Congress shall make no law ... abridging ... the right of the people ... to petition the Government for a redress of grievances.

Defendant asks, "How can I maintain my maximum Right to petition for redress of grievances, if that person whom I choose to speak for me is not permitted to do so?" If congress passes a statute requiring a federal court to abide a statute of the State in which it sits, and said statute of a state purports to make it a crime for a Defendant to be represented by a non-attorney, then Congress has effectively done not only what the Constitution does not authorize it to do, but it has done what is also expressly forbidden.

If such is the case, then Congress has made a "law" which frustrates the Right of The People, and the Defendant, "to petition the Government for a redress of grievances." Of what use is the Right to Petition for Redress of Grievances if theDefendant is personally handicapped by government? This handicap arises because the Defendant needs assistance in her petitioning, and yet she is limited by a bar association, or a state, or a court which says that a competent "friend" cannot be permitted to speak for the Petitioner because said "friend" has not been brainwashed in certain "approved" law schools. It is in such law schools that the deprivation of the Constitutional Rights, although set forth in plain and unambiguous language in the

Constitution itself, is not "settled doctrine." The "licensed attorneys" and "attorney-judges" say that "The Constitution is what the Supreme Court says it is." What if the Congress passes a law saying that any bureaucrat can rape any layman's wife and the Supreme Court says, "Yes, that's perfectly in harmony with the Constitution?" Then, are we The People to stand for it? Who gave them said authority? Now, what should The People do who have such a Congress and such a Supreme Court? Are the lower court judges brave enough to challenge it, or are they "bound" to follow the higher Court judges? And where is the member of the bar, the licensed attorney, who now steps forward and announces that the Supreme Court is mistaken? Where does his license go to? Now, who is going to permit him to appear in Court if he doesn't buckle down and stop rocking the establishment? Obviously, an extreme example has been used; but it is significant. Laymen would not have to stand for such nonsense. Licensed attorneys ... who knows? That laymen should be subjected to a "drifting" and "unstable" Constitution --which happens to be what some justices "think it is" at the moment -- can be very frustrating, and that a jury cannot hear a "Counsel" who is not beholden to such a damnable floating doctrine, are indeed a denial of "the Right to Petition (effectively) for Redress of Grievances." To preserve justice, to preserve the semblance of a fair trial and an impartial jury, let the Defendant petition for Redress of Grievances to the jury through "Counsel of his choice," who is not beholden to a corrupt and degenerate system which has perverted the very law by which it pretends to rule and which it pretends to protect and uphold. Defendant believes that true religion guarantees freedom of choice, or freedom to choose, to elect, and to select, taking responsibility for the consequences of said choices. Defendant further believes that she has the right to help others and, in turn, to be helped by those willing voluntarily to answer her call for assistance. In this case, she particularly means in the Courtroom where a hostile government is violating its own laws and trampling upon the Rights of the Sovereign People, which its officers are sworn to protect. When all the mighty force of an all powerful government is arrayed against a lone individual who has the courage to point out the government's inequities, said individual should be entitled, most of all, to the protection of his religious convictions and rights. Under the First Amendment, the right of conscience and the right to believe, as long as the same does not trample upon the rights of others, is the number one right protected by government. In pertinent part, the First Amendment states: Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof ....Defendant's religious conviction, again, calls for freedom from oppression and freedom from soul-stifling

special interest legislation slapped on a freedom-loving individual on behalf of self-serving perpetrators of special advantages to the legal profession, at the expense of the long-suffering victims of the same. Let the legal profession compete like men with the Counsel Defendant chooses for her defense, and for the proper exercise of her religious Rights, chief among which is the freedom of any choice which does not trample upon the Rights of others.

## DEFENDANT'S RIGHT TO EQUAL PROTECTION

Defendant's right to equal protection of the laws is guaranteed through the due process clause of the Fifth Amendment:

The due process clause of the Fifth Amendment guarantees to each citizen the equal protection of the laws and prohibits a denial thereof by any Federal official. ***Bolling v. Sharpe***, 327 U.S. 497. Defendant asks the Court to take Judicial Notice of an article from Newsweek, September 2, 1974, which tells how a layman, ***James Yager***, handled the legal problems of 3,500 clients (see paragraph 1). The same paragraph also speaks of "His most recent court appearance," which took place in Atlanta. It describes how "Yager paced the courtroom floor," as he addressed the jury. Mr. Yager is engaging in the practice of law, which is his Right as a Layman, or laymen, to assist him in his defense, if they so desire. To deny this motion is to give prisoners more Rights than to a Free and Natural Person. Such inequity before the law is intolerable. Said article mentions various others who have adopted law as an avocation and goes on to mention a Mr. Green, another former inmate now on parole, and says that: "Green is a familiar face in the Boston courtrooms, where he maintains his legal activities by submitting amicus briefs for other felons." It would be interesting to know if Mr. Green and Yeager, like Mr. Jefferson and James X, are also black men, and if therefore, Constitutional Rights are only available to black men. In both ***United Mine Workers v. Illinois Bar Association,*** 389 U.S. 217, and ***NAACP v. Button***, 371 U.S. 415, and also in ***Brotherhood of Railroad Trainmen v. Virginia State Bar***, 377 U.S. 1 (1964), it was held that a State may not pass statutes prohibiting the unauthorized practice of law or to interfere with the Right to freedom of speech, secured by the First Amendment. Defendant is entitled to equal protection of the laws and that includes his/her right to speak through whom he/she pleases, when he/she pleases. The only reasonable condition is that the decorum of the Court and the rules not in conflict with individual Rights

be maintained; otherwise there can be no valid denial of this inalienable and legal Right. Plaintiff/Defendant is agreeable to this, and has every intention of obeying the proper rules and maintaining the decorum of the Court. To do otherwise is unthinkable. Plaintiff/Defendant herein also believes that it is vital to his/her defense to seek whatever assistance he/she can trust, and that if he/she decides to be assisted by either bar or nonbar Counsel, he/she has every Right to do so. If the Plaintiff/Defendant believes that a combination of both may be to his/her advantage, to deny him/her this Right would constitute an unreasonable and arbitrary interference with her defense, by denying her the fundamental Rights freely to associate with whom he/she chooses; to freedom of speech; to freedom to Petition for Redress of Grievances; and her religious Right of conscience and freedom of choice, without which religion is worth but little. Plaintiff/Defendant also asks the Court to take Judicial Notice that other Defendants in criminal cases are allowed to plan their defenses without interference by the Courts, and Plaintiff/Defendant herein claims that same Right. Surely, we cannot have special laws for attorneys and special grants of privilege to them as a class when these very same privileges are denied all other citizens. The Constitutional prohibition against titles of nobility in Article I, Section 9, clause 7, is violated when "attorney" becomes a title of special privilege, i.e. "nobility." We must all have equal access to the Courts. Presently, only those attorneys have access to the Courts whom the Courts approve and, as a result, all "approved" attorneys are considered Officers of the Court. Where does the Plaintiff/defendant go who does not wish to be defended by an Officer of the Court? To use the power of the Court to force the defense into using an officer of the Court at the defense table offends the sensibilities of the Plaintiff/Defendant to the very core. Defendant may wish voluntarily to select an attorney among his/her Counsels, but this Plaintiff/Defendant believes that he/she should not be forced to do so. Defendant is simply seeking freedom of choice in the matter of whether he/she has no Counsel and represents himself/herself, or uses bar legal Counsel (attorney), mixed Counsel (attorneys and laymen)or lay Counsel only. The "stealthy encroachment" upon Plaintiff/Defendant's Right to a Counsel who is not authorized by the Bar, even though the Supreme Court in ***Schware v. Board of Examiners*** stated, **"No state/State can license attorneys"** 353 U.S. 238, 239 is the result of a monopoly of the legal establishment, both in and out of government, State and Federal, to "protect" their "price fixing"; to maintain artificially high legal fees; to educate the chosen few in law schools maintained largely at public expense; to protect attorneys from competition from those who know that attorneys have obstructed the Constitution and

left the People at the mercy of a swarm of bureaucrats with endless attorney-promoted regulations and laws which make "crimes" out of the exercise of natural and Constitutionally protected Rights, wherein the attorney-controlled government can prosecute the Sovereign Citizen and force her into the waiting, outstretched arms of her/his attorney "brotherhood," who will "advise" and "defend" her for a considerable fee. "The practice of Law is AN OCCUPATION OF COMMON RIGHT!" *Sims v. Aherns,* 271 S.W. 720 (1925). Little wonder that People are fed up with the profession when it is full of (bar) members "Haldemans, Erlichmans, Mitchells, and Deans." Little wonder many people almost vomit when contemplating what attorneys have done to this once mighty, powerful, and independent Republic. Legal fees come too high for many average Citizens. Yet, the same average Citizen cannot turn to laymen who may be well versed in the necessary legal area, and this restricts the Courts to attorneys and those who can afford them. Laymen who cannot afford attorneys must suffer along as best they can. It is as unjust a system of justice as one could conjure up. Of course, some persons may qualify for a Public Defender. That is like being alone in a pit of cobras, and someone comes along and wants to throw in another cobra. Under those circumstances, what is needed is a mongoose (read "Counsel of Choice"), not another cobra. Perhaps the STAR CHAMBERS weren't so bad after all.

## PLAINTIFF/DEFENDANT'S RIGHT TO FREEDOM OF SPEECH

Plaintiff/Defendant has not only the Right to speak for him/herself, but also to speak through whom he/she pleases. This is inherent in the First Amendment Right to freedom of speech. It is also self-evident as a part of the Natural Rights Doctrine. Those Rights which are called inherent and inalienable are outlined in the Declaration of Independence, which antedates all government. They are natural or God-given, rather than government-given, rights. Plaintiff/Defendant points out that he/she does not claim any "attorney-given" rights, but demands that her God-given, Natural Rights not be infringed upon. This fundamental Right of freedom of speech has been referred to previously, but Plaintiff/Defendant wishes to set it out separately to emphasize it to the Court, and herein refers again to *United Mine Workers v. Illinois Bar Association* supra, *NAACP v. Button* supra, and the Brotherhood of *Railroad Trainmen v. Virginia State Bar* supra in support of said Right. It is indicative that the words in the First Amendment embrace freedom "of " speech, and not just freedom "to" speak, and while

Defendant does not wish to prolong this Brief by a detailed discussion of the difference between the two terms, he/she simply wishes to bring to the Court's attention that there is a difference, and that its application is obvious.

## DENIAL OF FREEDOM OF COUNSEL RESULTS IN A CONFLICT OF INTEREST

Plaintiff/Defendant's request for the Court to recognize his/her Right to non-Attorney Counsel in lieu of, or in addition to, attorney counsel, would mean that the Court would have to rule during trial on a motion regarding Plaintiff/Defendant's Right to non-attorney assistance, including that of assistant spokesman. If presiding Judge of this Honorable Court has, in the past, ever been A member of any Bar Association or is, at present, a member of a Bar Association, or has close friends or associates connected with a Bar Association, then Plaintiff/Defendant finds it difficult to see how the Court could possibly render an unprejudiced and impartial ruling on Plaintiff/Defendant's motion regarding his Right to non-attorney counsel. It appears to Plaintiff/Defendant that the Court would find itself at variance with his own standards, mainly the Cannons of Judicial Ethics, No. 29, which states:

> A judge should abstain from performing or taking part in any judicial act in which his personal interests are involved. If he has a personal litigation in the court of which he is judge, he need not resign his judgeship on that account, but he should, of course, refrain from any judicial act in such controversy. It is apparent to the Plaintiff/Defendant that the denial of Plaintiff/Defendant's motion herein would call for the thinking, on the part of most reasonable persons, that the denial was based, at least in part, on a conflict of interest and upon a "hardship of the case," meaning upon the unfortunate Bar Associations. Granting the motion, however, could not be interpreted as being a conflict of interest, but rather, granting the motion would occur despite personal interest and in favor of fairness, of due process, and the justice to which the Sovereign Citizen of this Republic is entitled under the Sixth Amendment.

# FEDERAL COURT'S ENFORCEMENT OF PRACTICE-OF-LAW STATE STATUTE ABRIDGES FIRST, NINTH, AND TENTH AMENDMENTS

The Tenth Amendment of the Constitution of the United States:
The powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people. The power to abrogate the Rights mentioned herein has not been delegated to the United States nor to any State through the Constitution. Nothing in the Constitution of this Union state authorizes a delegation of power to the state to thwart and frustrate the foregoing Rights, i.e. freedom of speech, of religion, of assembly, of petitioning for redress of grievances, of due process, of the Right to contract, and of equal treatment under the law. Therefore, assuming the foregoing is true, then the "power" remains with the People, who are the Sovereigns in this country as heretofore pointed out. Therefore, the Plaintiff/Defendant retains the power for his/her choice of a spokesman in Court, "anything in the Constitution or laws of any State to the contrary notwithstanding." Regardless of this state's statutes or any arbitrary rule making, it cannot invalidate the Defendant's fundamental Rights protected by the Constitution. Said pretended right to "regulate" the "practice of law" must fall, or recede, when put alongside the Defendant's right to a fair trial by an impartial jury, with due process, freedom of speech, and contract, as heretofore pointed Out. It is impossible to delegate to another that which the delegator does not himself possess. Defendant does not have the right to compel the inadequate representation of another and, therefore, this Plaintiff/Defendant is powerless to delegate such a tyrannical power to a legislature, whether or not controlled by attorneys or any Bar association. To summarize the foregoing, the Tenth Amendment prohibits this State and its Courts from restricting Defendant's fundamental Right to a non-attorney spokesman in court. Such power is not given to the State by either the U.S. or by the State Constitutions. Therefore, in civil cases, the Legislature has usurped, at the prodding of attorneys, the so-called Right to institute a statute prohibiting a Defendant, in a prosecution against him by his government, from relying upon a preferred spokesman of trust and confidence. In criminal or civil cases, there is no valid reason, statute, or Court ruling that can alter the fundamental Right to Counsel, and the Courts, in denying said spokesman, are arbitrarily usurping Plaintiff/Defendant's Right. The Ninth Amendment reserves all non-enumerated Rights. They are not to be denied or disparaged, though not enumerated. The mention and enumeration of the Right to Counsel under the Supreme authority of the

Sixth Amendment cannot be construed to deny or disparage the Right to that Counsel being a non-attorney, or a non-member of any Bar Association to only plea bargain and lose. It would appear that any decent person would have no difficulty agreeing with the above, and that any other ruling would indeed be "frivolous" and without Constitutional authority. Again, imposing restrictions on Plaintiff/Defendant's Counsel violates and circumvents Defendant's Fifth Amendment Rights. In addition, it imposes cruel and unusual punishment upon the Defendant by forcing him to seek legal assistance, when and if he needs it, from those whom he either does not trust or cannot afford.

## DENIAL OF NON-ATTORNEY COUNSEL VIOLATES CIVIL RIGHTS

Denial of Plaintiff/Defendant's desire for a non-attorney of his choice is also a deprivation of his/her Civil Rights under color of law, in violation of Defendant's fundamental Rights as protected by 42 U.S.C. 1983, 1985, and 1986. See ***Owens v. The City of Independence***.

## CONCLUSION

Any denial of Counsel is an attempt to accomplish that which is specifically prohibited by the Sixth Amendment. The Right recognized therein says nothing about only "court-approved counsel," and that fundamental Right is in no way qualified or limited. The U.S. Supreme Court held in ***Miller v. Milwaukee***, 272 U.S. 713, 715, that if a statute is part of an unlawful scheme to reach a prohibited result, then "... the statute must fail ...."

This was again upheld in ***McCallen v. Massachusetts***, 279 U.S. 620, 630. Legislators, whether Federal or State, may not restrict the Courts to attorneys only in order effectively to deny Counsel to any Plaintiff/Defendant who evinces a desire to be represented or assisted by a "friend" in preference to a (bar)"attorney." What cannot be done by the front door cannot be lawfully done by way of the back door. Legislators who pass laws do not have to be attorneys, nor do those who execute the law, i.e. Sheriffs, Governors, Presidents, etc. Even the Justices of the U.S. Supreme Court need not be (bar) attorneys. To exclude the People from defending their "friends" in the Courts turns said Courts into a playground for the legal establishment, and is

a blatant violation of the Plaintiff/Defendant's fundamental Right to Counsel of choice, due process of law, and equal protection under the law. **Justice Brandeis** said: Discrimination is the act of treating differently two persons or things under like circumstances. ***National Life Insurance Co. v. United States***, 277 U.S. 508, 630. As far back as 1886, the U.S. Supreme Court was concerned with the Unjust and illegal discriminations which were running rampant. The Court frowned upon law administered with an "unequal hand":... so as practically to make unjust and illegal discrimination between persons in similar circumstances material to their rights, the denial of equal justice is still within the prohibition of the Constitution. ***Yick Wo v. Hopkins*** supra Therefore, the Courts cannot be the exclusive territory of a legal "elite corps," but must be open to all the Sovereign People alike -- on an equal basis, providing due process of Law and equal protection under that Law. The Ninth and Tenth Amendments also prohibit the denial of Counsel of choice. Nowhere has Defendant or his predecessors delegated such restrictive powers to the United States or to any of the Union states, and if the Court will closely examine the Ninth and Tenth Amendments, it will find that the Right to Counsel of choice, such as Plaintiff/Defendant herein claims, is also secured in the penumbra of these Amendments, particularly the Ninth Amendment, which is protected in the states. ***Roe v. Wade***, 41 L.W. 4213(1973); ***Shapiro v. U.S.***, 641, 394 US 618 (1966); ***Griswold v. Connecticut,*** 381 U.S. 479 (1964). Speaking of controlling Constitutional law, as opposed to mere statute law, **Chief Justice Marshall said:** Those then, who controvert this principle, that the Constitution is to be considered in court as a paramount law, are reduced to the necessity of maintaining that courts must close their eyes on the Constitution and see only the law. And the Court concluded that: This doctrine would subvert the very foundation of all written constitutions. ***Marbury v. Madison,*** 5 U.S. 137, 176, The United States Supreme Court also pointed out in this decision that, in declaring what should be the supreme law of the land, the Constitution itself was first mentioned and "... not the laws of the United States generally ...." The attorneys who sit in our State legislatures and in our Congress have no right to pass laws which infringe upon, or abolish, our fundamental Rights under the Constitution for the United States of America, as lawfully amended, and such unconstitutional laws which purport to do so must be declared null and void and not binding upon the Courts. See ***Miranda v. Arizona*** supra, at 491.

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge Margaret M. Morrow and the assigned discovery Magistrate Judge is Margaret A. Nagle.

The case number on all documents filed with the Court should read as follows:

## CV09- 3509 MMM (MANx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

================================================

**NOTICE TO COUNSEL**

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| | | |
|---|---|---|
| **[X] Western Division**<br>312 N. Spring St., Rm. G-8<br>Los Angeles, CA 90012 | **[ ] Southern Division**<br>411 West Fourth St., Rm. 1-053<br>Santa Ana, CA 92701-4516 | **[ ] Eastern Division**<br>3470 Twelfth St., Rm. 134<br>Riverside, CA 92501 |

Failure to file at the proper location will result in your documents being returned to you.

FOR OFFICE USE ONLY

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

James Shannon

PLAINTIFF(S)

v.

AMERICA'S SERVICING COMPANY; GMAC
MORTGAGE FIRST AMERICAN LOANSTAR
TRUSTEE SERVICES; AND  DOES 1-10; et al

DEFENDANT(S).

CASE NUMBER

(CV09-3509 mmm (mash)

**SUMMONS**

TO:    THE ABOVE-NAMED DEFENDANT(S):

YOU ARE HEREBY SUMMONED and required to file with this court and serve upon plaintiff's attorney
James Shannon                                                    , whose address is:

21329 Alvar Place, Carson, CA [90745]

FOR OFFICE USE ONLY

an answer to the ☒ complaint ☐_____amended complaint ☐ counterclaim ☐ cross-claim
which is herewith served upon you within __20__ days after service of this Summons upon you, exclusive
of the day of service. If you fail to do so, judgement by default will be taken against you for the relief
demanded in the complaint.

Clerk, U.S. District Court

Dated: ___5/18/09___

By: _____
Deputy Clerk
SEAL
(Seal of the Court)

FOR OFFICE USE ONLY

CV-01A (01/01)

SUMMONS